**McCAMMON & ASSOCIATES, INC., a Colorado corporation in its own name and doing business as Group Thirty, Inc., Plaintiff-Appellant,**

v.

**McGRAW–HILL BROADCASTING COMPANY, INC., a New York corporation doing business as KMGH–TV Channel 7, and Joe Pennington, Defendants-Appellees.**

**No. 84CA0808.**

Colorado Court of Appeals, Div. II.

Feb. 20, 1986.

Law Offices of Jay Stuart Radetsky, Jay Stuart Radetsky, David A. Gilbert, Denver, for plaintiff-appellant.

Holme Roberts & Owen, Jeffrey A. Chase, Carol H. Green, Denver, for defendants-appellees.

BERMAN, Judge.

Plaintiff, McCammon and Associates, Inc., appeals a summary judgment dismissing its defamation and invasion of privacy action against defendants, McGraw-Hill Broadcasting Company, Inc., owner and operator of KMGH–TV, and Joe Pennington,

a news reporter employed by McGraw-Hill. We affirm.

Plaintiff claims that it was injured by a news broadcast in the course of a five-part, week-long investigative series by Pennington, broadcast by KMGH–TV, concerning illegal and improper practices by employment agencies. During one broadcast, the defendants reported that a person using the plaintiff's service was illegally requested by her employer to pay for the services of the plaintiff in finding her employment. After complaints were made to the Department of Labor, the employer retracted its request.

The entire broadcast, as it pertained to the plaintiff, was as follows:

"There are basically two kinds of employment agencies. Those that collect their fee from the job applicant and those which are paid by employers. Most complaints pertain to applicant fee paid companies. But there are problems which develop with employer fee paid agencies. They are generally not as serious, but they sure can be perplexing.

When Tina Perri needed work last year, she contacted McCammon and Associates, a private personnel agency. Shortly thereafter, Miss Perri went to work for the Seiscom Delta United Corporation. Seiscom Delta paid Miss Perri's fee—slightly more than $1,200. But the company insisted Perri sign an agreement to reimburse it for the fee over a six-month period.

When the new employee ran into trouble getting her paycheck on time, she quit. Seiscom Delta refused to give Miss Perri her final check claiming she still owed the company for the employment fee. The company even billed her for an additional $70.

When Miss Perri complained to the Department of Labor, Seiscom Delta changed its tune. The Labor Department claimed it was illegal for the company to collect an indirect fee from an employee in connection with an employment fee. It took a lot of letter writing and help from the Department of Labor,

but Miss Perri finally got her final paycheck. The Labor Department says Seiscom Delta's reimbursement policy is not uncommon in the Denver area. *Now, Miss Perri's troubles were obviously not the fault of the recruiter who found her job.* But her troubles, according to the Labor Department, are ones that everyone should be aware of when they accept a job and the employer pays the employment fee." (emphasis added)

During a very short portion of that broadcast, plaintiff's sign and building was shown on the video.

The trial court granted defendants' motion for summary judgment and dismissed the action.

The first issue in this case is whether the broadcast constituted libel *per se.* To be libel *per se* the published material must carry a defamatory imputation on its face and is actionable without an allegation of proof of damages: in contrast, any libel which does not carry such imputation on its face is libel *per quod* and is actionable only where special damages are pleaded and proved. *Brown v. Barnes,* 133 Colo. 411, 296 P.2d 739 (1956). Because plaintiff failed to plead or prove special damages, this court addresses only whether the broadcast was libel *per se.*

In determining whether the broadcast here was libel *per se,* the court was required to interpret the broadcast alone, without the aid of inducements, colloquialisms, innuendos, and explanatory circumstances in order to establish its defamatory meaning. To be libelous *per se,* the broadcast must contain a defamatory meaning specifically directed at the person claiming injury, which must, on its face, and without the aid of intrinsic proof, be unmistakably recognized as injurious. *See Interstate Detective Bureau v. Denver Post, Inc.,* 29 Colo.App. 313, 484 P.2d 131 (1971).

■ In this case the words and pictures were not injurious to plaintiff. They were in fact true statements and depictions. There was nothing about the words of the spoken broadcast and the video broadcast of the plaintiff's sign and building that was either untrue or defamatory.[1] *See Reddick v. Craig,* 719 P.2d 340 (Colo.App.1985).

■ Plaintiff's contention that the inferences created by the video broadcast were injurious to it is the classical depiction of defamation *per quod,* not defamation *per se.* For defendant to be liable here, the plaintiff would have to use both inducement and explanation to infer a defamatory meaning and, thus, would also have to show special damages. *See Brown v. Barnes, supra.* Plaintiff neither pleaded nor proved special damages; hence, summary judgment was properly entered on the libel claim.

■ As to the plaintiff's claim for invasion of privacy, we agree that the trial court properly dismissed this matter. To recover under this tort, plaintiff must prove that he was placed before the public in a "false-light" and that it was done with knowledge of its falsity or in reckless disregard of the truth. *Cantrell v. Forest City Publishing Co.,* 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974); *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); *see* Restatement (Second) of Torts § 652(e) (1977). There is nothing in the record indicating that defendants' broadcast concerning plaintiff placed him in a false light, or that they had knowledge of or acted in reckless disregard as to the falsity of the broadcast.

The judgment is affirmed.

SMITH and STERNBERG, JJ., concur.

---

1. Comparison of this case with *Lind v. O'Reilly,* 636 P.2d 1319 (Colo.App.1981) is significant. In *Lind,* the alleged defamatory words were juxtaposed with a picture of plaintiff's house. This court ruled that the juxtaposition was, at most, defamation *per quod* and special damages were required. In contrast, here only truthful non-defamatory words were juxtaposed with plaintiff's sign. The supposed defamatory words were presumably somewhere else in the broadcast.