**Clyde Ura CAIN, Sr., Appellant,**

v.

**HEARST CORPORATION d/b/a the Houston Chronicle Publishing Company, Appellee.**

No. D–4171.

Supreme Court of Texas.

Argued May 11, 1994.

Decided June 22, 1994.

Clyde Ura Cain, Sr., pro se.

Joseph G. Chumlea, Dallas, amicus curiae.

William W. Ogden and Stacy W. Beasley, Houston, for appellee.

Justice GONZALEZ delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice CORNYN and Justice ENOCH join.

This case comes to us on certified questions from the United States Court of Appeals for the Fifth Circuit. We are asked to decide two issues: 1) whether Texas recognizes the tort of false light invasion of privacy, and 2) if Texas recognizes this tort, which statute of limitations governs that action.[1] Because false light substantially duplicates the tort of defamation while lacking many of its procedural limitations, we answer the first

question in the negative, thereby dispensing with the need to answer the second question.

Clyde Cain is a prison inmate in the Texas Department of Corrections serving a life sentence for murder. He sued the Hearst Corporation, d/b/a the Houston Chronicle Publishing Company, claiming that a newspaper article invaded his privacy by placing him in a false light. The article, which appeared in the Chronicle on June 30, 1991, referred to Cain as a burglar, thief, pimp, and killer. In recounting Cain's criminal record the article, in summary, states that:

> Cain is believed to have killed as many as eight people; Cain killed one of his lawyers in 1973 and married the lawyer's widow a few months later; Cain killed a 67 year old man in 1977; in 1983 he "bought" a prostitute from a friend to help finance his activities; Cain persuaded the prostitute to marry a trailer park owner named Anderson, so that Cain could kill Anderson and share the prostitute's inheritance from Anderson; when the prostitute balked, Cain threatened to kill her 5 year old daughter and "deliver her daughter's head in a wastepaper basket"; the prostitute married Anderson 3 days later, and on January 5, 1985 Cain killed Anderson.

Cain's sole complaint is that the article printed false information that he was a member of the "Dixie Mafia" and that he had killed as many as eight people. Cain asserted that these statements put him in a false light with the public. Suit was filed in state court one and one-half years after the article was published.

Hearst removed the case to the United States District Court for the Southern District of Texas. The court granted Hearst's motion for dismissal on the grounds that Cain's action lies in libel, and held that the one-year limitations period expired before Cain brought the suit. Determining that the above questions are unsettled under Texas precedent, the Fifth Circuit certified these questions to us. *Cain v. Hearst Corp.*, 1 F.3d 345 (5th Cir.1993), *certified question accepted*, 37 Tex.Sup.Ct.J. 513 (Feb. 9, 1994).

---

1. This case confronts us with the issue reserved by this court in *Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 200 (Tex.1992).

### Genesis of Invasion of Privacy

Professor William L. Prosser cataloged four distinct injuries under the tort of invasion of privacy—(1) intrusion upon a person's right to be left alone in his or her own affairs, (2) publicity given to private information about a person, (3) appropriation of some element of the person's personality for commercial use, and (4) false light. WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS 638 (2d ed. 1955). These four variations of the tort were adopted by the Second Restatement of Torts. *See* RESTATEMENT (SECOND) OF TORTS § 652A (1977).

Texas did not recognize any of the four types of invasion of privacy until our decision in *Billings v. Atkinson,* 489 S.W.2d 858 (Tex. 1973), which involved the first category of invasion of privacy as developed by Prosser and recognized by the Restatement: an intrusion into the plaintiff's seclusion. In *Billings,* the defendant, a telephone company employee, had placed a wire tap on the plaintiff's residential telephone line and had apparently listened to plaintiff's personal telephone conversations. In affording the plaintiff relief, we noted that the majority of jurisdictions in the United States recognize an independent cause of action for the invasion of privacy, and held that "the right of privacy constitutes a legal injury for which a remedy will be granted." *Id.* at 860. We have also expressly recognized the second type of privacy right, the right to "freedom from public disclosure of embarrassing private facts." *Industrial Found. of the South v. Texas Indus. Accident Bd.,* 540 S.W.2d 668, 682 (Tex.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977).[2] Although we acknowledged the Prosser categorization in *Industrial Foundation,* we have never embraced nor recognized the fourth and final type of invasion of privacy, the "false light" tort. We decline to do so today.

The RESTATEMENT (SECOND) OF TORTS, Section 652E defines false light invasion of privacy as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

RESTATEMENT (SECOND) OF TORTS § 652E (1977). The tort has been recognized by several Texas courts of appeals. *See Reeves v. Western Co. of N. Am.,* 867 S.W.2d 385, 396–97 (Tex.App.—San Antonio 1993, no writ); *Mitre v. La Plaza Mall,* 857 S.W.2d 752, 755 (Tex.App.—Corpus Christi 1993, writ denied); *Mitre v. Brooks Fashion Stores, Inc.,* 840 S.W.2d 612, 622 (Tex.App.—Corpus Christi 1992, writ denied); *Wilhite v. H.E. Butt Co.,* 812 S.W.2d 1, 6 (Tex.App.—Corpus Christi 1991, no writ); *Wavell v. Caller–Times Publishing Co.,* 809 S.W.2d 633, 634 (Tex.App.—Corpus Christi 1991, writ denied); *Diamond Shamrock Ref. & Mktg. Co. v. Mendez,* 809 S.W.2d 514, 517 (Tex.App.—San Antonio 1991), *rev'd,* 844 S.W.2d 198, 200 (Tex.1992); *Boyles v. Kerr,* 806 S.W.2d 255, 258–59 (Tex.App.—Texarkana 1991) *rev'd* 855 S.W.2d 593 (Tex.1993); *Clarke v. Denton Publishing Co.,* 793 S.W.2d 329, 330 (Tex.App.—Fort Worth 1990, writ denied); *Covington v. Houston Post,* 743 S.W.2d 345, 346–47 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Floyd v. Park Cities People, Inc.,* 685 S.W.2d 96, 97–98 (Tex.App.—Dallas 1985, no writ); *National Bonding Agency v. Demeson,* 648 S.W.2d 748, 749–50 (Tex.App.—Dallas 1983, no writ); *Gill v. Snow,* 644 S.W.2d 222, 224 (Tex.

---

2. The third type of privacy right, protecting against appropriation of a name or likeness, is well established in the jurisprudence of many states. *See* James M. Treece, *Commercial Exploitation of Names, Likenesses, and Personal Histories,* 51 TEX.L.REV. 637, 638–39 (1973); *Pavesich v. New England Life Ins.,* 122 Ga. 190, 50 S.E. 68, 75–81 (1905) (discussing Michigan and New York cases and predicting future widespread acceptance of this tort). The only reported Texas case involving this tort is *Kimbrough v. Coca-Cola/USA,* 521 S.W.2d 719, 721–22 (Tex.Civ. App.—Eastland 1975, writ ref'd n.r.e.). *See also Benavidez v. Anheuser Busch, Inc.,* 873 F.2d 102, 104 (5th Cir.1989) (applying Texas law).

App.—Fort Worth 1982, no writ); *Moore v. Charles B. Pierce Film Enterprises,* 589 S.W.2d 489, 490–91 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.) In all of these cases, either no application for writ of error was filed in this Court, or the Court rejected the application with the notation "writ denied," or the posture of the case was such that it was not necessary to reach the issue, so that our approval was never given to any of these holdings. Also, several federal courts interpreting Texas law have permitted a cause of action for false light. *See Moore v. Big Picture Co.,* 828 F.2d 270, 273–74 (5th Cir.1987); *Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084, 1091 (5th Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985); *Braun v. Flynt,* 726 F.2d 245, 252 (5th Cir.), *cert. denied,* 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984). Nevertheless, false light remains the least-recognized and most controversial aspect of invasion of privacy. *See* BRUCE W. SANFORD, LIBEL AND PRIVACY § 11.4.1 at 567 (2d ed. 1991) ("Of Dean Prosser's four types of privacy torts, the 'false light' school has generated the most criticism because of its elusive, amorphous nature."); Diane Leenheer Zimmerman, *False Light Invasion of Privacy: The Light that Failed,* 64 N.Y.U.L.REV. 364, 452 (1989) ("the wiser course may be for states to eliminate false light altogether").

Today, we join those jurisdictions that do not recognize the false light invasion of privacy action. *Renwick v. News & Observer Publishing Co.,* 310 N.C. 312, 312 S.E.2d 405, 410, *cert. denied,* 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 121 (1984) ("We will not expand the tort of invasion of privacy recognized in this jurisdiction to include 'false light' invasions of privacy."); *see Sullivan v. Pulitzer Broadcasting Co.,* 709 S.W.2d 475, 480–81 (Mo.1986) (refusing to recognize the tort of

false light based on a fact pattern that presents nothing more than a defamation claim); *Arrington v. New York Times Co.,* 55 N.Y.2d 433, 449 N.Y.S.2d 941, 945, 434 N.E.2d 1319, 1323 (1982), *cert. denied,* 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983) (noting "serious concern" that recognition of false light would sidestep safeguards for libel cases); *Yeager v. Local 20, Int'l Bhd. of Teamsters,* 6 Ohio St.3d 369, 371–74, 453 N.E.2d 666, 669–70 (1983) ("Under the facts of the instant case, we find no rationale which compels us to adopt the 'false light' theory or recovery in Ohio at this time."); *Falwell v. Penthouse Int'l, Ltd.,* 521 F.Supp. 1204, 1206 (W.D.Va. 1981) ("[t]he courts of Virginia simply do not recognize such a common law cause of action"); *Mitchell v. Random House, Inc.,* 865 F.2d 664, 672 (5th Cir.1989) ("[we] accordingly decline to adopt for Mississippi Mitchell's false light theory") [3]; *Elm Medical Lab., Inc. v. RKO Gen., Inc.,* 403 Mass. 779, 532 N.E.2d 675, 681 (1989) ("The only invasion of privacy the plaintiffs assert is 'putting plaintiff[s] in a false light'. This court has not recognized that tort and does not choose to do so now."); *Hoppe v. Hearst Corp.,* 53 Wash.App. 668, 770 P.2d 203, 208 n. 5 (Wash.Ct.App.1989) ("We note that the trial court could have properly dismissed Hoppe's false light claim on the basis that thus far, Washington has not recognized the tort."); *Zinda v. Louisiana Pac. Corp.,* 149 Wis.2d 913, 440 N.W.2d 548, 555 (1989) (stating that Wisconsin's privacy statute "does not provide a cause of action for placing a person in a false light in the public eye").[4]

We reject the false light invasion of privacy tort for two reasons: 1) it largely duplicates other rights of recovery, particularly defamation; and 2) it lacks many of the procedural limitations that accompany ac-

**3.** The Dissent cites *Young v. Jackson,* 572 So.2d 378, 381–82 (Miss.1990), and *Prescott v. Bay St. Louis Newspapers, Inc.,* 497 So.2d 77, 79 (Miss. 1986) for the proposition that Mississippi has recognized the tort of false light. 878 S.W. 577, 585 n. 2. However, *Young,* 572 S.W.2d at 382, dealt with the public disclosure of private facts, the second type of invasion of privacy action catalogued by Prosser. The Court in *Young* cites *Prescott* as having recognized the tort of false light. However, the court in *Prescott* specifically reserved the issue of whether Mississippi would

recognize the tort. 497 So.2d at 80 ("It is not important for us to delineate our position regarding recognition of false light here …").

**4.** See also *Waring v. William Morrow & Co.,* 821 F.Supp. 1188, 1190 (S.D.Tex.1993) ("The failure of the Texas Supreme Court to recognize the tort leads this court to do the same."); *Maxwell v. Henry,* 815 F.Supp. 213, 215 (S.D.Tex.1993) ("Texas law does not recognize the tort of 'false light.' "); *La Plaza Mall,* 857 S.W.2d at 755.

tions for defamation, thus unacceptably increasing the tension that already exists between free speech constitutional guarantees and tort law.

### Duplication of Other Causes of Action

The false light action, as it has been defined by the Restatement, permits recovery for injuries caused by publicity that unreasonably places the plaintiff in a false light before the public. RESTATEMENT (SECOND) OF TORTS § 652A. Although not explicitly required by the Restatement definition, most jurisdictions, including the lower Texas courts that have recognized the action, require that a statement be false if it is to be cognizable under the false light doctrine. *See e.g., Clarke,* 793 S.W.2d at 331 (false light action "concerns untrue statements about a party"); *Gill,* 644 S.W.2d at 224 ("evidence will not support a cause of action for false light because we believe no false statements of fact were ever publicized"); *Machleder v. Diaz,* 801 F.2d 46, 53 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987) (in New Jersey, truth is an absolute defense to the false light action). The falsity requirement is sensible, considering that the "revelation of private facts" invasion of privacy tort purports to grant relief for the disclosure of true statements that adversely affect the plaintiff.

If we were to recognize a false light tort in Texas, it would largely duplicate several existing causes of action, particularly defamation. As we observed in *Billings,* 489 S.W.2d at 860, "some of the right of privacy interests have been afforded protection under such traditional theories as libel and slander, wrongful search and seizure, eavesdropping and wiretapping, and other similar invasions into the private business and personal affairs of an individual." Recovery for defamation requires the communication of a false statement. *A.H. Belo Corp v. Rayzor,* 644 S.W.2d 71, 79 (Tex.App.—Ft. Worth 1982, writ. ref'd n.r.e.) ("The *sine qua non* of recovery for defamation . . . is the existence of falsehood") (quoting *Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers v. Austin,* 418 U.S. 264, 283, 94 S.Ct. 2770, 2781, 41 L.Ed.2d 745 (1974)). Libel, which is written defama-

tion, is defined by Section 73.001 of the Texas Civil Practice & Remedies Code as follows:

> A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

TEX.CIV.PRAC. & REM.CODE § 73.001 (1986). Slander, the spoken form of defamation, is not codified by statute, but has been recognized at common law to be "a defamatory statement orally published to a third party without justification or excuse." *See Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 921 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.); *see also* RESTATEMENT (SECOND) OF TORTS § 568 (1977). Thus, like false light, defamatory statements must be false in order to be actionable. The false light tort also overlaps with some of the other, better recognized, privacy torts. *See, e.g.,* Harry Kalven, Jr., *Privacy in Tort Law—Were Warren and Brandeis Wrong?,* 31 LAW & CONTEMP. PROBS. 326, 332 (1966) (noting the potential overlap of false light and appropriation); *Lerman v. Flynt Distrib. Co.,* 745 F.2d 123, 135 (2d Cir.1984) (asserting that "while not specifically alleged in her complaint, [plaintiff's] action [for libel, for violation of a statutory right to privacy, and for appropriation or a common law right to privacy] presents a classic false light claim"), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985).

Furthermore, the elements of damages that have been recognized in false light actions are similar to those awarded for defamation. The principal element of actual damages for false light claims is typically mental anguish, *see* RESTATEMENT (SECOND) OF TORTS § 652H (1977); *Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084, 1086 (5th Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985); *Braun v. Flynt,* 726 F.2d 245, 255–56 (5th Cir.), *cert. denied,* 469 U.S. 883, 105 S.Ct. 252, 83

L.Ed.2d 189 (1984), but physical illness and harm to the plaintiff's commercial interests have also been recognized. *See* William L. Prosser, *Privacy*, 48 CAL.L.REV. 383, 409 (1960); Russell G. Donaldson, Annotation, *False Light Invasion of Privacy—Defenses and Remedies*, 57 A.L.R. 4th 244, 311–12 (1987). These are essentially the types of damages sought in defamation actions. *See* RESTATEMENT (SECOND) OF TORTS §§ 620–23 (1977); BRUCE W. SANFORD, LIBEL AND PRIVACY § 11.4.1 at 431–54 (2d ed. 1991); *Shearson Lehman Hutton*, 806 S.W.2d at 922. Thus many, if not all, of the injuries redressed by the false light tort are also redressed by defamation.

The false light cases considered by Texas courts of appeals, were all brought, or could have been brought, under another legal theory. *See, Reeves v. Western Co. of N. Am.*, 867 S.W.2d 385, 397 (because court limited action under false light to publication of false statements, action could have been brought under slander); *Mitre v. La Plaza Mall*, 857 S.W.2d 752, 755 & n. 3 (Tex.App.—Corpus Christi 1993, writ denied) (court allowed plaintiff to proceed in its claim for false light because fact issues existed over whether defendants statements were defamatory and whether defendant acted with malice); *Mitre v. Brooks Fashion Stores, Inc.*, 840 S.W.2d 612, 622 (Tex.App.—Corpus Christi 1992, writ denied) (holding that defendant's publication was actionable as both a false light invasion of privacy and a defamation); *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 6–7 (Tex.App.—Corpus Christi 1991, no writ) (suit brought as both false light and defamation); *Wavell v. Caller–Times Publishing Co.*, 809 S.W.2d 633 (Tex.App.—Corpus Christi 1991, writ denied) (holding that newspaper publications alleged to constitute false light invasions of privacy are subject to the same protections as are publications alleged to be defamatory); *Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 809 S.W.2d 514 (Tex.App.—San Antonio 1991), (plaintiff did not pursue defamation claim) *rev'd*, 844 S.W.2d 198, 199 (Tex.1992); *Boyles v. Kerr*, 806 S.W.2d 255 (Tex.App.—Texarkana 1991) *rev'd* 855 S.W.2d 593, 594, 603 (Tex.1993) (false light action could have been brought as intentional infliction of emotional distress);

*Clarke v. Denton Publishing Co.*, 793 S.W.2d 329, 330–32 (Tex.App.—Fort Worth 1990, writ denied) (holding plaintiff could proceed under false light when statute of limitations for libel had run); *Covington v. Houston Post*, 743 S.W.2d 345, 346–47 (Tex.App.—Houston [14th Dist.] 1987, no writ) (holding plaintiff could proceed under false light when statute of limitations for libel had run); *Floyd v. Park Cities People, Inc.*, 685 S.W.2d 96, 98 (because photograph true and accurate account of a matter of public interest, all theories of liability fail); *National Bonding Agency v. Demeson*, 648 S.W.2d 748, 749 (Tex.App.—Dallas 1983, no writ) (suit brought under libel, in addition to false light); *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982, no writ) (court held there was no relief for false light because statement was not false; there would likewise be no relief for defamation); *Moore v. Charles B. Pierce Film Enter.*, 589 S.W.2d 489, 491 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.) (as in actions for defamation, court limits recovery to person about whom false information is published). We see no reason to recognize a cause of action for false light invasion of privacy when recovery for that tort is substantially duplicated by torts already established in this State.

### Freedom of Speech Considerations

As discussed above, the false light tort bears remarkable similarities to defamation. However, the torts are not wholly identical for two reasons: (1) defamation actions are subject to a number of procedural requirements to which invasion of privacy actions are not subject, and (2) certain publications not actionable under a defamation theory might be actionable under false light. Far from persuading us that these distinctions justify a separate tort, we believe they demonstrate that adopting a false light tort in this State would unacceptably derogate constitutional free speech rights under both the Texas and the United States Constitution.

*1. Procedural and Substantive Differences*

Actions for defamation in Texas are subject to numerous procedural and substantive hurdles. For example, accounts of govern-

mental proceedings, public meetings dealing with a public purpose, or any "reasonable and fair comment on or criticism of an official act" are privileged under Texas Civil Practice & Remedies Code Section 73.002. Broadcasters are generally not liable in defamation for broadcasts made by third parties. TEX.CIV.PRAC. & REM.CODE § 73.004 (1986). Qualified privileges against defamation exist at common law when a communication is made in good faith and the author, the recipient or a third person, or one of their family members, has an interest that is sufficiently affected by the communication. *See Holloway v. Texas Medical Ass'n*, 757 S.W.2d 810, 813 (Tex.App.—Houston [1st Dist.] 1988, writ denied). A communication may also be conditionally privileged if it affects an important public interest. *See generally* BRUCE W. SANFORD, *supra*, at 701–94.1 (collecting libel privilege statutes from all fifty states). Damages awarded for defamatory statements may be mitigated by factors such as public apology, correction, or retraction. TEX.CIV.PRAC. & REM.CODE § 73.003 (1986); *see generally* BRUCE W. SANFORD, *supra*, at 701–94.1 (collecting libel retraction statutes from thirty-three states). *See also* RESTATEMENT (SECOND) OF TORTS § 652E cmt. e (1977) (listing other possible limitations on the defamation action, including bond posting requirements and proof of special damages).

These technical restrictions serve to safeguard the freedom of speech. Every defamation action that the law permits necessarily inhibits free speech. As the Supreme Court stated with respect to political speech in *New York Times v. Sullivan*, 376 U.S. 254, 272, 84 S.Ct. 710, 722, 11 L.Ed.2d 686 (1964), "[w]hatever is added to the field of libel is taken from the field of free debate." While less compelling, these same considerations are also at play in private, non-political expression. Thus, the defamation action has been narrowly tailored to limit free speech as little as possible.

Courts in many jurisdictions have preserved their protection of speech by holding false light actions to the same strictures as defamation actions. *See Sullivan v. Pulitzer Broadcasting Co.*, 709 S.W.2d 475, 480 (Mo. 1986) ("[A] number of courts that have either

recognized the tort [of false light] or assumed the existence of the action for argument's sake apply the statute of limitations for defamation actions to a claim for 'false light'"). *Kapellas v. Kofman*, 1 Cal.3d 20, 81 Cal.Rptr. 360, 370, 459 P.2d 912, 922 (1969) (privilege for truthful publications); *Gashgai v. Leibowitz*, 703 F.2d 10, 13 (1st Cir.1983) (limitations). *See also* Zimmerman, *supra*, at nn. 16 & 21 (1989); Debra Ann Bacharach, Comment, *The Privacy Action in Texas: Its Characterization, and a Determination of Applicable Statutes of Limitations*, 29 Sw. L.J. 928, 950 (1975); Russell G. Donaldson, Annotation, *False Light Invasion of Privacy–Defenses and Remedies*, 57 A.L.R. 4th 244, 266–68 (1987). As comment e to section 652E of the Restatement reasons:

> [w]hen the false publicity is also defamatory ... it is arguable that limitations of long standing that have been found desirable for the action for defamation should not be successfully evaded by a proceeding upon a different theory of later origin, in the development of which the attention of the courts has not been directed to the limitations.

RESTATEMENT (SECOND) OF TORTS § 652E cmt. e (1977). Permitting plaintiffs to bring actions for false light without the limits established for defamation actions may inhibit free speech beyond the permissible range. On the other hand, no useful purpose would be served by the separate tort if these restrictions are imposed. As the court observed in *Renwick v. News & Observer Publishing Co.*, 310 N.C. 312, 312 S.E.2d 405, *cert. denied*, 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 121 (1984):

> Given the First Amendment limitations placed upon defamation actions by *[New York Times v.] Sullivan* and upon false light invasion of privacy actions by *[Time, Inc. v.] Hill*, we think that such additional remedies as we *might* be required to make available to plaintiffs should we recognize false light invasion of privacy claims are not sufficient to justify the recognition in this jurisdiction of such inherently constitutionally suspect claims for relief.

*Id.* at 413. *See also Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 135 (2d Cir.1984)

("regardless of whether [plaintiff's] cause of action is cast in terms of libel or false light ... the same constitutional protections apply"); *Berry v. NBC, Inc.*, 480 F.2d 428, 431 (8th Cir.1973) ("[t]he problem is whether the plaintiff can, by suing for invasion of privacy, by-pass the various safeguards and limitations which have grown up around the accusation of defamation"); *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258, 94 S.Ct. 2831, 2839–40, 41 L.Ed.2d 730 (1974) ("the choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitutes the exercise of an editorial control and judgment."); *Goodrich v. Waterbury Republican–American, Inc.*, 188 Conn. 107, 448 A.2d 1317, 1331 (1982) ("defendant was constitutionally protected from liability for a false light invasion of privacy, regardless of his decision to omit facts that may place plaintiff under a less harsh public scrutiny."); *Machleder v. Diaz*, 801 F.2d 46, 53 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987) ("[A] rule that would hold a media defendant liable for broadcasting truthful statements and action because it failed to include additional facts that might have cast the plaintiff in a more favorable or balanced light ... violates the First Amendment."). Thus, we decline to restrict speech in any manner beyond our existing tort law.

### 2. Non–Defamatory Speech

In theory, the false light action may provide a remedy for certain non-defamatory speech against which there may be no other remedy in tort law. *See* RESTATEMENT (SECOND) OF TORTS § 652E, cmt. b (1977). This

rationale, however, does not persuade us to recognize the false light tort.

It is questionable whether a remedy for non-defamatory speech should exist at all. In *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), the Supreme Court plurality viewed with disfavor the restriction of nondefamatory statements by the New York privacy statute:

> We create a grave risk of serious impairment of the indispensable service of a free press in a free society if we saddle the press with the impossible burden of verifying to a certainty the facts associated in news articles with a person's name, picture or portrait, particularly as related to *non-defamatory* matter.

385 U.S. at 389, 87 S.Ct. at 542–43 (emphasis added).[5]

In *Time, Inc. v. Hill*, 385 U.S. 374, 387–90, 87 S.Ct. 534, 541–43, 17 L.Ed.2d 456 the United States Supreme Court has held that the tort of false light is consistent with First Amendment freedoms provided there is a finding of actual malice, knowledge of the falsity, or of reckless disregard of the truth. *See also Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 251–53, 95 S.Ct. 465, 469–71, 42 L.Ed.2d 419. These cases have been criticized as vastly expanding the category of speech not protected by First Amendment freedoms. *See* Zimmerman, *supra*, 64 N.Y.U.L.Rev. at 364. The class of speech restricted by defamation is only that which defames. False light may be brought against any untruth to which the subject of the speech takes umbrage. Editors for the media may guard against defamation by being alert to facts which tend to diminish reputation; under false light, any fact in the story, no matter how seemingly innocuous, may prove to be the basis for liability.[6]

---

**5.** The Supreme Court again cast doubt on recovery for non-defamatory false speech in *Hustler Magazine v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). The case centered on a parotic and offensive depiction of Rev. Falwell that appeared in *Hustler Magazine*. A jury awarded Falwell $100,000 in actual damages for the intentional infliction of emotional distress, plus an additional $100,000 in punitive damages. The Supreme Court reversed, holding that this application of the tort constituted an illegitimate effort to restrict the magazine's free speech rights. *Id.* at 50–51, 108 S.Ct. at 879.

**6.** The dissent, arguing for the necessity for the tort of false light, gives as an example a person who is erroneously identified with a philosophical position with which the subject does not believe in. Such a theory would effectively eliminate photographic coverage of protests, for fear that a person in the crowd who does not believe in the cause would be entitled to bring suit for the false impression the photograph creates.

The Restatement adds an element not associated with defamation, the requirement that the statement places the subject in a false light "highly offensive" to the reasonable person. The distinction fails to draw reasonably clear lines between lawful and unlawful conduct, however. "A law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process." *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); *see also Hustler Magazine v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) (classification of speech as "outrageous" for suits for intentional infliction of emotional distress does not provide a meaningful standard, and would allow jury to impose damages on the basis of the jurors' tastes or views).

Thus, the uncertainty of not knowing what speech may subject the speaker or writer to liability would have an unacceptable chilling effect on freedom of speech. Such liability is incongruent with the high priority this state has placed on freedom of expression. *Davenport v. Garcia*, 834 S.W.2d 4, 7 (Tex.1992).

Only recently, this Court recognized that in some aspects our free speech provision is broader than the First Amendment. See *Davenport*, 834 S.W.2d at 8; *Fort Worth Star Telegram v. Walker*, 834 S.W.2d 54, 56 (Tex.1992). In *Davenport* and *Fort Worth Star Telegram*, we construed Article I Section 8 of the Texas Constitution to have independent vitality from the federal constitution, and to impose even higher standards on court orders which restrict the right of free speech.

On balance, the marginal benefit to be achieved by permitting recovery against nondefamatory speech not addressed by any existing tort is outweighed by the probable chilling effect on speech and, in some cases, on freedom of the press, that would result from recognition of the false light tort. For the reasons expressed in this opinion, we expressly decline to recognize the tort of false light.

Justice HIGHTOWER, joined by Justice DOGGETT, Justice GAMMAGE and Justice SPECTOR, dissenting.

I agree with several propositions stated by the court. First, I agree that Texas continues to recognize a cause of action for violation of the right to privacy when there is an intrusion into an individual's seclusion or when there is a public disclosure of embarrassing private facts. Second, I agree that certain publications that do not constitute defamation may constitute false light. Third, I agree that, in the name of privacy, we cannot ignore free speech rights under either the Texas or the United States Constitution. I cannot, however, agree with this court's decision to reject the tort of false light invasion of privacy.

The right of privacy is "the right of an individual to be left alone, to live a life of seclusion, to be free from unwarranted publicity." *E.g. Billings v. Atkinson*, 489 S.W.2d 858, 859 (Tex.1973) (citing 77 C.J.S. *Right of Privacy* § 1); *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 50 S.E. 68, 71 (1905) (stating that the legal right to be let alone has existed since Roman times and that there were ancient punishments for attracting attention to others); Ken Gormley, *One Hundred Years of Privacy*, 1992 WIS.L.REV. 1335, 1367–68 (stating that privacy and protection of individuality in constitutional and tort law come from the same swath of common law, both designed to assure individual liberty); THOMAS M. COOLEY, COOLEY ON TORTS 29 (2d ed. 1888); *see also Diamond Shamrock Refining & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 203 (Tex.1992) (Hightower, J., concurring) (recognizing that the right of individual privacy is implicit among the general, great, and essential principles of liberty). Independent of the common law rights of property, contract, reputation, and physical integrity, the right to privacy exists and an invasion of the right gives rise to a cause of action. *Billings*, 489 S.W.2d at 860. The right embodies the esteem that a civilized society holds for the values of personal dignity, integrity, and sense of selfhood. Frank J. Cavico, *Invasion of Privacy in the Private Employment Sector: Tortious and Ethical Aspects*, 30 HOUS.L.REV. 1263, 1265 (1993). It is the scope of this right that the court

unduly narrows today. It is the violation of this right for which the court refuses to allow a complete remedy.

The court concedes that a number of courts have treated false light as a viable

cause of action in Texas, dating back for over a decade, *see Gill v. Snow,* 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982, no writ);[1] however, the court rejects a clear majority rule,[2] joining a minority of one state supreme

1. *See also Maewal v. Adventist Health Sys.,* 868 S.W.2d 886, 888 & 894 (Tex.App.—Fort Worth 1993, writ denied); *Reeves v. Western Co. of N. Am.,* 867 S.W.2d 385, 396–97 (Tex.App.—San Antonio 1993, writ requested); *Mitre v. La Plaza Mall,* 857 S.W.2d 752, 755 (Tex.App.—Corpus Christi 1993, writ denied); *Mitre v. Brooks Fashion Stores, Inc.,* 840 S.W.2d 612, 621–23 (Tex. App.—Corpus Christi 1992, writ denied); *Wavell v. Caller–Times Pub. Co.,* 809 S.W.2d 633, 634–36 (Tex.App.—Corpus Christi 1991, writ denied); *Boyles v. Kerr,* 806 S.W.2d 255, 258–59 (Tex. App.—Texarkana 1991), *rev'd on other grounds,* 855 S.W.2d 593 (Tex.1993); *Clarke v. Denton Publishing Co.,* 793 S.W.2d 329, 331 (Tex.App.— Fort Worth 1990, writ denied); *Covington v. Houston Post,* 743 S.W.2d 345, 347 (Tex.App.— Houston [14th Dist.] 1987, no writ); *Floyd v. Park Cities People,* 685 S.W.2d 96, 97 (Tex.App.— Dallas 1985, no writ); *Moore v. Charles B. Pierce Film Enters.,* 589 S.W.2d 489, 490 (Tex.Civ. App.—Texarkana 1979, writ ref'd n.r.e.); *Mc-Lean v. International Harvester Co.,* 817 F.2d 1214, 1219–20 (5th Cir.1987); *Faloona v. Hustler Magazine, Inc.,* 799 F.2d 1000, 1005–07 (5th Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987); *Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084, 1088 (5th Cir. 1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985); *Braun v. Flynt,* 726 F.2d 245, 252–53 (5th Cir.1984), *cert. denied,* 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984); *Ritzmann v. Weekly World News, Inc.,* 614 F.Supp. 1336, 1340 (N.D.Tex.1985); *Justice v. Belo Broadcasting Corp.,* 472 F.Supp. 145, 146 (N.D.Tex.1979).

2. *See Phillips v. Smalley Maintenance Servs., Inc.,* 435 So.2d 705, 708 (Ala.1983); *Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 783 P.2d 781, 788 (1989); *Florida Publishing Co. v. Fletcher,* 340 So.2d 914, 918 (Fla.1976), *cert. denied,* 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977); *Peterson v. Idaho First Nat'l Bank,* 83 Idaho 578, 367 P.2d 284, 287–88 (1961); *Leopold v. Levin,* 45 Ill.2d 434, 259 N.E.2d 250, 254–56 (1970); *Douglas v. Hustler Magazine, Inc.,* 769 F.2d 1128, 1133–34 (7th Cir.1985) (Illinois law), *cert. denied,* 475 U.S. 1094, 106 S.Ct. 1489, 89 L.Ed.2d 892 (1986); *Rinsley v. Frydman,* 221 Kan. 297, 559 P.2d 334, 339 (Kan. 1977); *Estate of Berthiaume v. Pratt,* 365 A.2d 792, 794–95 (Me.1976); *Beaumont v. Brown,* 401 Mich. 80, 257 N.W.2d 522 (1977); *Dietz v. Wometco W. Mich. TV,* 160 Mich.App. 367, 407 N.W.2d 649, 655–56 (Ct.1987); *Young v. Jackson,* 572 So.2d 378, 381–82 (Miss.1990) (stating that it has "recognized a right of action in at least three contexts: (1) ... false light [citing] *Prescott v. Bay St. Louis Newspapers, Inc.,* 497 So.2d 77,

79 (Miss.1986)"); *Hamberger v. Eastman,* 106 N.H. 107, 206 A.2d 239, 240–241 (1964); *Devlin v. Greiner,* 147 N.J.Super. 446, 371 A.2d 380, 388–89 (1977); *Montgomery Ward v. Larragoite,* 81 N.M. 383, 467 P.2d 399, 401 (1970); *Gruschus v. Curtis Publishing Co.,* 342 F.2d 775, 776 (10th Cir.1965) (New Mexico law); *Tollefson v. Price,* 247 Or. 398, 430 P.2d 990, 991–92 (1967); *Bennett v. Norban,* 396 Pa. 94, 151 A.2d 476, 477–79 (1959); *Todd v. South Carolina Farm Bureau Mut. Ins. Co.,* 276 S.C. 284, 278 S.E.2d 607, 610 (1981); *Montgomery Ward v. Shope,* 286 N.W.2d 806, 808 (S.D.1979); *Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 699, 320 S.E.2d 70, 85 (1983); *McCammon & Assocs., Inc. v. McGraw–Hill Broadcasting Co., Inc.,* 716 P.2d 490, 492 (Colo.Ct.App.1986); *Thomason v. Times–Journal, Inc.,* 379 S.E.2d 551, 554 (Ga.Ct. App.1989, cert. denied); *Cox Communications, Inc. v. Lowe,* 173 Ga.App. 812, 328 S.E.2d 384, 386 (Ga.Ct.App., cert. denied), *cert. denied,* 474 U.S. 982, 106 S.Ct. 388, 88 L.Ed.2d 341 (1985); *Pierson v. News Group Publications, Inc.,* 549 F.Supp. 635, 642 (S.D.Ga.1982); *Tooley v. Canal Motors, Inc.,* 296 So.2d 453, 454–55 (La.Ct.App. 1974); *Rouly v. Enserch Corp.,* 835 F.2d 1127, 1132 (5th Cir.1988) (Louisiana law); *Allen v. Bethlehem Steel Corp.,* 76 Md.App. 642, 547 A.2d 1105, 1108 (Md.Ct.Spec.App.1988, cert. denied); *Lawrence v. A.S. Abell Co.,* 299 Md. 697, 475 A.2d 448, 450–51 (Md.Ct.Spec.App.1984); *International Union v. Garner,* 601 F.Supp. 187, 189 (M.D.Tenn.1985).

Several states have not decided whether the action will be viable. *See Elm Medical Lab. v. RKO Gen.,* 403 Mass. 779, 532 N.E.2d 675, 681 (1989) (briefly noting that it has not recognized false light); *Fox Tree v. Harte–Hanks Communications, Inc.,* 398 Mass. 845, 501 N.E.2d 519, 522 (Mass.1986) (putting off deciding whether to adopt the tort); *Sullivan v. Pulitzer Broadcasting Co.,* 709 S.W.2d 475, 480–81 (Mo.1986) (not deciding whether to denominate the tort); *Henry v. Taft T.V. & Radio Co.,* 774 S.W.2d 889, 891–92 (Mo.Ct.App.1989) (stating that the case lacked facts meeting the "invitation extended in [*Sullivan*] for recognition of the tort...."); *Arrington v. New York Times,* 55 N.Y.2d 433, 449 N.Y.S.2d 941, 945, 434 N.E.2d 1319, 1323 (1982) (stating that it did not reach the issue), *cert. denied,* 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983); *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 371– 74, 453 N.E.2d 666, 669–70 (Ohio 1983) (stating that the facts of the case did not incline it to adopt the tort); *Eastwood v. Cascade Broadcasting Co.,* 106 Wash.2d 466, 722 P.2d 1295, 1299 (1986) (reserving the issue); *compare Kapellas v. Kofman,* 1 Cal.3d 20, 81 Cal.Rptr. 360, 369, 459 P.2d 912, 921 n. 16 (1969) (dismissing a false

court in squarely rejecting false light invasion of privacy.[3] The court proffers two rationales for its decision to sever this branch of privacy from its complements. The court argues first that false light largely duplicates defamation and second that false light unduly increases the tensions between tort and free speech law. Not only do these arguments strain against each other, but they simply are not persuasive.

That the substance of communications constituting defamation will usually also constitute false light does not make the two torts coextensive. The scope of actionable conduct differs between the torts, and the torts are designed to protect different interests.

First, the court rightly notes, as do many courts and commentators, that there are communications which, based on their content, are not defamatory but may be false light violations of privacy because they are highly offensive. *E.g., Time, Inc. v. Hill,* 385 U.S. 374, 384–85 n. 9, 87 S.Ct. 534, 540–41, 17 L.Ed.2d 456 (1967); *Crump v. Beckley News-*

*papers, Inc.,* 173 W.Va. 699, 320 S.E.2d 70, 87 (1983); WILLIAM L. PROSSER, LAW OF TORTS 813 (4th ed. 1971); *see also* Diane Leenheer Zimmerman, *False Light Invasion of Privacy: The Light that Failed,* 64 N.Y.U.L.REV. 364, 367 n. 16 & 396 (1989). For example, an article which falsely reports that an individual suffers from a serious disease such as cancer would not be defamatory but could comprise a cause of action for false light. Gary T. Schwartz, *Explaining and Justifying A Limited Tort of False Light Invasion of Privacy,* 41 CASE W.RES.L.REV. 885, 895 (1991).[4]

Second, the torts protect different interests. Defamation preserves individuals' reputation interests, but false light invasion of privacy, as the other branches of the right of privacy, safeguards individuals' sensitivities about what people know and believe about them. *E.g. Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 783 P.2d 781, 787 (1989); *Crump,* 320 S.E.2d at 87; Frank J. Cavico, *Invasion of Privacy in the Private*

light claim that overlapped with defamation) *with Fibreboard Corp. v. Hartford Accident & Indem. Co.,* 16 Cal.App.4th 492, 20 Cal.Rptr.2d 376, 389–90 (Cal.Ct.App.1993) (including false light in the cluster of wrongs comprising invasions of the right to privacy under the common law). Although the court counts Virginia as a minority rule state, Virginia has not addressed the issue.

**3.** The only other state supreme court to reject the tort of false light invasion of privacy in its entirety is North Carolina. *See Renwick v. News & Observer Publishing Co.,* 310 N.C. 312, 312 S.E.2d 405, 410 (N.C.), *cert. denied,* 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 121 (1984). Not only has *Renwick* been criticized for "employ[ing] flawed logic" in its refusal to recognize the tort of false light invasion of privacy, Walter D. Fisher, Jr., Note, Renwick v. News & Observer Publishing Co.: *North Carolina Rejects the False Light Invasion of Privacy Tort,* 63 N.C.L.REV. 767, 773–74 (1985), but the *Renwick* approach is one of casting doubt on the need for the right to privacy in general. *See Renwick,* 312 S.E.2d at 413 (speculating that the conditions which led Warren and Brandeis to argue almost a century ago for a separate tort of invasion of privacy have subsided). The court misplaces its reliance on the opinions of those who disagree with the principles expressed in *Billings v. Atkinson*—that there is a right to privacy warranting protection under the common law and that damages for mental suffering are recoverable without the need of showing other injury because the

injury in a case of willful invasion of the right of privacy is essentially mental and subjective. *Compare* 489 S.W.2d 858, 860–61 (Tex.1973) *with* Harry Kalven, Jr., *Privacy in Tort Law— Were Warren and Brandeis Wrong?,* 31 L. & CONTEMP.PROBS. 326, 327 (1966) (stating that "tort law's effort to protect the right of privacy seems to me a mistake") *and* Diane Leenheer Zimmerman, *False Light Invasion of Privacy: The Light that Failed,* 64 N.Y.U.L.REV. 364, 452 (1989) (concluding that false light could be retained if it requires proof of non-trivial harms—that is more than mental distress).

**4.** The court wrongly suggests that innocuous and accidental errors may provide the basis for false light liability. *See, e.g.,* RESTATEMENT (SECOND) OF TORTS § 652E & cmt. c (1977) (requiring that the false light be highly offensive to a reasonable person and stating that the tort applies only to major misrepresentations); *see also Time, Inc. v. Hill,* 385 U.S. 374, 387–90, 87 S.Ct. 534, 541–43, 17 L.Ed.2d 456 (1967) (requiring actual malice, not accidental conduct, as a basis for false light). Nor should the tort's focus on offensive behavior and emotional harm prevent its recognition. *Cf.* RESTATEMENT (SECOND) OF TORTS § 46 (1965) (recognizing intentional infliction of emotional distress which requires extreme and outrageous conduct); *Twyman v. Twyman,* 855 S.W.2d 619, 622–23 (Tex.1993) (adopting intentional infliction of emotional distress as outlined in the Restatement and rejecting vagueness arguments because the law constantly requires jurors to decide what is reasonable).

*Employment Sector: Tortious and Ethical Aspects,* 30 HOUS.L.REV. 1263, 1276 n. 42 (1993); Bryan R. Lasswell, Comment, *In Defense of False Light: Why False Light Must Remain A Viable Cause of Action,* 34 S.TEX.L.REV. 149, 156, 163 & 172 (1993); Ken Gormley, *One Hundred Years of Privacy,* 1992 WIS.L.REV. 1335, 1352 (stating that privacy as a tort notion reflects an instinct in the common law to preserve an individual's inviolate personality); Jerry A. Gibson, *The Developing Law of Tort Liability for Non–Physical Harm: A Guide for the Texas Practitioner,* 18 ST. MARY'S L.J. 899, 928–29 (1987); Gary T. Schwartz, *Explaining and Justifying A Limited Tort of False Light Invasion of Privacy,* 41 CASE W.RES.L.REV. 885, 897–98 (1991); Melville B. Nimmer, *The Right to Speak from* Times *to* Time: *First Amendment Theory Applied to Libel and Misapplied to Privacy,* 56 CAL.L.REV. 935, 958 (1968); *see Gruschus v. Curtis Publishing Co.,* 342 F.2d 775, 776 (10th Cir.1965) (noting that damage to reputation is relevant to suits for libel but not to suits for invasion of privacy); Walter D. Fisher, Jr., Note, *Renwick v. News & Observer Publishing Co.: North Carolina Rejects the False Light Invasion of Privacy Tort,* 63 N.C.L.REV. 767, 773–74 (1985); *see generally* Diane Leenheer Zimmerman, *False Light Invasion of Privacy: The Light that Failed,* 64 N.Y.U.L.REV. 364, 371–72 (1989).

The need for protection of individual sensitivity already has been recognized by this court:

> [T]he increased complexity and intensity of modern civilization and the development of man's spiritual sensibilities have rendered man more sensitive to publicity and have increased his need of privacy, while the great technological improvements in the means of communication have more and more subjected the intimacies of his private life to exploitation by those who pander to commercialism and to prurient and idle curiosity. A legally enforceable right of privacy is deemed to be a proper protection against this type of encroachment upon the personality of the individual.

*Billings v. Atkinson,* 489 S.W.2d 858, 860 (Tex.1973) (quoting 62 AM.JUR.2D *Privacy* § 4, p. 683).

That, in some cases, both torts allow mental anguish damages does not detract from these differing protections. *Cf. Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 783 P.2d 781, 786 (1989) (finding that although actions for intentional infliction of emotional distress and invasion of privacy compensate similar damages, there is no reason to refuse to recognize both torts). For example, mental anguish damages are available in suits for medical malpractice, certain violations of the Deceptive Trade Practices Act, or personal injury, but that does not mean that the torts duplicate each other or the interests they serve.

Furthermore, the scopes of the torts differ with respect to the level of publicity required for the cause of action to arise. False light requires significantly broader publication than does defamation. Defamation only requires publication to a single individual, but false light requires widespread dissemination. *E.g. Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 699, 320 S.E.2d 70, 87–88 (1983); Bryan R. Lasswell, Comment, *In Defense of False Light: Why False Light Must Remain A Viable Cause of Action,* 34 S.TEX.L.REV. 149, 173 (1993); Walter D. Fisher, Jr., Note, Renwick v. News & Observer Publishing Co.: *North Carolina Rejects the False Light Invasion of Privacy Tort,* 63 N.C.L.REV. 767, 776 n. 73 (1985); *compare* RESTATEMENT (SECOND) OF TORTS § 563 (1977) (stating that the publication requirement in defamation only requires dissemination to a third party) *with Moore v. Big Picture Co.,* 828 F.2d 270, 274 (5th Cir. 1987) (noting that false light requires widespread publicity). And, the court could require that the plaintiff in a false light case meet a higher burden of proof than in defamation. *See Machleder v. Diaz,* 801 F.2d 46, 56 (2d Cir.1986) (stating that the burden of proof in false light is clear and convincing evidence but only a preponderance of the evidence in defamation), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987).

The court's conclusion that many, if not all, of the injuries redressed by the false light tort are redressed by defamation is plainly wrong as a matter of logic. That false light covers some of the injuries covered by defamation in no way leads to the conclusion that defamation covers most of the injuries covered by false light.

Furthermore, overlap, by itself, is no reason to reject a cause of action for false light invasion of privacy. For example, in Texas, a citizen who feels cheated in a financial transaction has a variety of choices for a cause of action, including a claim for fraud, violation of the Deceptive Trade Practices Act, breach of warranty, or a combination of any and all of these claims. Moreover, although traditional theories such as actions for eavesdropping and wiretapping protected individuals from invasions into their private business and personal affairs, the availability of such actions did not preclude the court from adopting the right of privacy in the

wiretapping context. *Billings v. Atkinson,* 489 S.W.2d 858, 860 (Tex.1973).

The court's only explanation of why it will tolerate no overlap in this arena is that free speech rights are implicated because the procedures attending defamation are lacking. Rather than assess and weigh the interests at stake in each right[5] and add any procedures necessary to effectuate an even balance of the rights, the court simply concludes that false light invasion of privacy and free speech cannot coexist.[6]

The court questions the constitutional viability of false light invasion of privacy in a cursory and unsatisfactory analysis. For example, the court fails to address the United States Supreme Court's acceptance of false light invasion of privacy so long as the plaintiff proves that the defendant acted with actual malice—that is, with knowledge of the falsity or in reckless disregard for the truth. *Time, Inc. v. Hill,* 385 U.S. 374, 387–90, 87 S.Ct. 534, 541–43, 17 L.Ed.2d 456 (1967) (explaining the standard and noting that "consti-

5. The court fails to define any societal benefit in deliberate falsehoods that cause harm. The benefit to such speech is unclear. *Time, Inc. v. Hill,* 385 U.S. 374, 390, 87 S.Ct. 534, 543, 17 L.Ed.2d 456 (1967) (quoting *Garrison v. Louisiana,* 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964)); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942); Melville B. Nimmer, *The Right to Speak from* Times *to* Time: *First Amendment Theory Applied to Libel and Misapplied to Privacy,* 56 Cal.L.Rev. 935, 962 (1968) (arguing that knowing lies hardly contribute to democratic dialogue and are hard to regard as a necessary function of self-fulfillment); *see also* Gary T. Schwartz, *Explaining and Justifying A Limited Tort of False Light Invasion of Privacy,* 41 Case W.Res.L.Rev. 885, 907 & 914–15 (1991) (describing the tort as a useful device for indirectly vindicating readers' claims of misrepresentation against journals knowingly running false stories and explaining that false light suits improve market information by letting readers know of reason to doubt the accuracy of a story or of stories in a particular journal); *cf.* Richard A. Posner, Economic Analysis of Law 97 (3d ed. 1986) (arguing that the liar makes a positive investment in misinformation which is socially wasteful).

Furthermore, the court makes no effort to address the patent inconsistency in allowing suit for public disclosure of private facts as an invasion of privacy but not for disclosure of untrue facts. *See* Walter D. Fisher, Jr., Note, *Renwick v. News & Observer Publishing Co.: North Carolina Rejects the False Light Invasion of Privacy Tort,* 63 N.C.L.Rev. 767, 778 (1985) (noting that "it

would be patently illogical to recognize a privacy action for public disclosure of private facts while refusing to recognize a false light claim" because it would lead to anomalous results). The court apparently puts a premium on falsehood in deciding that false light injuries will go unremedied. *See* Melville B. Nimmer, The Right to Speak from Times *to* Time: *First Amendment Theory Applied to Libel and Misapplied to Privacy,* 56 Cal.L.Rev. 935, 963 (1968).

6. The assumption that false light invasion of privacy enables plaintiffs to bypass defamation restrictions is largely incorrect. Gary T. Schwartz, *Explaining and Justifying A Limited Tort of False Light Invasion of Privacy,* 41 Case W.Res.L.Rev. 885, 890 (1991). As the court concedes, most jurisdictions balance privacy and free speech rights by enacting procedural safeguards. For example, substantial truth is a defense to false light invasion of privacy, defeating arguments that editors should have omitted or added certain facts to a story. *Machleder v. Diaz,* 801 F.2d 46, 53–55 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987); *see also Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 258, 94 S.Ct. 2831, 2839–40, 41 L.Ed.2d 730 (1974); *Goodrich v. Waterbury Republican-American, Inc.,* 188 Conn. 107, 448 A.2d 1317, 1331 (1982). And, of course, this court could address this concern by requiring that safeguards recognized in defamation cases also apply in false light invasion of privacy cases. *See, e.g.,* Restatement (Second) of Torts §§ 652F, 652G (1977) (dealing with privileges).

tutional guarantees can tolerate sanctions against *calculated* falsehood without significant impairment of their essential function"); *see also Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 251–53, 95 S.Ct. 465, 469–71, 42 L.Ed.2d 419 (1974) (reaffirming the standard set forth in *Time* ). Application of the *Time* standard adequately secures federal free speech rights.[7] Gary T. Schwartz, *Explaining and Justifying A Limited Tort of False Light Invasion of Privacy*, 41 CASE W.RES.L.REV. 885, 906 (1991) (noting that the intentional or reckless falsehood test essentially eliminates the spectre of unconstitutionality); Bryan R. Lasswell, Comment, *In Defense of False Light: Why False Light Must Remain A Viable Cause of Action*, 34 S.TEX.L.REV. 149, 174 (1993) (stating that free speech criticisms of false light invasion of privacy are not valid in light of *Time* ); *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974) (explaining that the actual malice standard administers a powerful antidote to the inducement to media self-censorship and that it exacts a correspondingly high price from plaintiffs who are subjected to injury but who will not be able to surmount the standard). Instead of abiding by the decisions of the federal courts on the first amendment issue, the court relies on a lone commentator in implying that the United States Supreme Court failed in its constitutional analysis. That cannot be the proper role for this court.

The right of privacy and the right to speak have coexisted, and each must be recognized and enforced with due respect for the other. *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 50 S.E. 68, 73 (1905). That recognizing a right of privacy involves perplexing questions to determine where it ends and the rights of others and of the public begin is a poor excuse for not recognizing the right of privacy. *Id.* at 72. Cases may arise near the border marking the right of privacy and the right of another individual or of the public, but this is true of many other individ-

ual rights recognized by the law. *Id.* Our justice system allows us to remain confident that with

> honest and fearless trial judges to pass in the first instance upon the question of law as to the existence of the right in each case, whose decisions are subject to review by the court of last resort, and with fair and impartial juries to pass upon the questions of fact involved, and assess the damages in the event of a recovery, whose verdict is, under our law, in all cases subject to supervision and scrutiny by the trial judge, within the limits of a legal discretion, there need be no more fear that the right of privacy will be the occasion of unjustifiable litigation, oppression, or wrong than that the existence of many other rights in the law would bring about such results.

*Id.*

I respectfully dissent.

---

7. The court correctly points out, and I wholeheartedly agree, that the Texas constitution has independent vitality from the federal constitution and that Texas affords its citizens broader free speech rights than the minimum federal guarantees of the First Amendment. *See Davenport v. Garcia*, 834 S.W.2d 4, 10–11 (Tex.1992, orig.

proceeding). I believe that the actual malice standard comports with these broad guarantees in the context of providing a remedy for damaging and false speech. Rather than simply reject the false light branch of invasion of privacy, I would favor an approach balancing each of these important rights.