

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00105-CV

JANIS E. ROBERTS                                                    APPELLANT

V.

CAREFLITE                                                            APPELLEE

----------

## FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Janis E. Roberts sued her former employer Appellee CareFlite for unlawful termination under *Sabine Pilot*[2] and for invasion of privacy. CareFlite filed a combined traditional and no-evidence motion for summary judgment, which the trial court granted without specifying the grounds. In one issue, Roberts now appeals the grant of summary judgment on her claim of invasion of

---

[1]*See* Tex. R. App. P. 47.4.

[2]*Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985).

privacy by intrusion on seclusion. Because we hold that the trial court did not err by granting summary judgment for CareFlite, we affirm the trial court's judgment.

CareFlite employed Roberts as a paramedic. Roberts was "friends" on the website Facebook.com with fellow CareFlite paramedic Robert Sumien and CareFlite helicopter pilot Scott Schoenhardt. Roberts posted on the Facebook wall of Schoenhardt that she had transported a patient who needed restraining and that she wanted to slap the patient.

Sheila Calvert is a compliance officer with CareFlite. Her sister, Delicia Haynes, is a CareFlite member. Haynes saw Roberts's wall posting and notified Calvert. Calvert sent a message to Roberts through Facebook. In her message, Calvert stated:

> I just wanted to remind you that the public sees your posts. People outside of CareFlite and outside of EMS. In fact, my sister saw your post to Scott Schoenhardt where you stated you wanted to slap a patient[,] and she thought she wouldn't want anyone such as that taking care of her and made the comment that maybe she didn't want to renew her CareFlite membership. People you don't expect to see your posts do. I'll bet Scott has many friends in EMS[,] and all any of them would have to do is a screen shot and send it in to the state and you could be looking at a suspension of your EMS license and fines. Believe me, I'm not trying to come down on you about this. I'm trying to help you realize that people out there are losing their jobs and livelihood because of such posts[,] and I don't want to see that happen to you. If you don't believe me, just google it or if you like I can send you some links to articles. I hope you will consider removing that post.

Roberts responded with a message to Calvert that stated:

> Yeah, whatever. YOU weren't there. Whenever I have to have a firefighter ride in with me because of a patient's attitude, and I fear

2

for MY safety, I truly believe a patient needs an attitude adjustment. Think about that the next time YOU correct someone!!

Calvert responded to Roberts, again with a message sent through Facebook's messaging feature, stating:

I was trying to be nice about the situation and provide you a courteous reminder of the regulations in which you practice in the state and the public's perception. [Rule 157.36(b)(28) of the Texas Administrative Code[3]] states you cannot engage in activities which betray[] the public's trust in EMS. I believe your comment could have done that. Additionally, CareFlite has policies against employees calling into question our honesty, integrity[,] or reputation. I understand you had a difficult call and patient. I've also had my share of those. That information should not be broadcasted[,] however. I can show you an article where a Kansas medic had his license suspended for 90 days, tons of legal bills, and had to bag groceries during that time because he posted a derogatory remark about his obese patient. As far as me "thinking about that before I correct someone[,]" . . . I'm the Compliance Officer for CareFlite[,] and it's my job. We can have that conversation later and off [Facebook].

Roberts responded with a message stating, "[By the way], I didn't slap the patient, I was not rude to the family OR the patient and the call went very smoothly, thank you for asking." Roberts did delete her comment from Schoenhardt's wall.

Roberts later posted on her own Facebook wall, stating

Yes, I DO get upset on some calls when my patient goes off in the house and I have to have a firefighter ride in with me because I fear for MY own safety. I think that is a valid excuse for wanting to use some sort of restraints. Just saying!!

---

[3]25 Tex. Admin. Code § 157.36(b)(28) (2012) (Tex. Dep't of State Health Serv., Criteria for Denial and Disciplinary Actions for EMS Personnel and Applicant and Voluntary Surrender of a Certificate or License).

Sumien then posted a comment on this post, which stated, "Yeah like a boot to the head . . . . . . ;^) Seriously yeah restraints or actual HELP from PD instead of the norm."

Roberts sent Sumien an email in which she posted the text from the Facebook message exchange she had had with Calvert. She sent the message with the subject line, "Check this shit out."

About a week later, Haynes (Calvert's sister) sent an email to CareFlite CEO James Swartz. In the email, Haynes told Swartz about Roberts's Facebook post about wanting to slap a patient and about Sumien's comment about "a boot to the head." CareFlite terminated Roberts's employment a few days later. As grounds for termination, CareFlite noted Roberts's post about "feeling like slapping a patient to get control of them" and stated that her response to Calvert was "unprofessional and insubordinate."[4]

Roberts asserted that the real reason that CareFlite terminated her employment was that she had reported an employee for starting an IV on a patient without the proper certification for performing such a procedure, which Roberts asserted was a criminal act, and that she refused to participate in a cover up. In Roberts's invasion of privacy claim, she asserted that CareFlite's

---

[4]Sumien's employment was also terminated because of his comments on Facebook, and he also sued CareFlite and appealed from the trial court's judgment in favor of CareFlite. This court affirmed the trial court's judgment in that case. *Sumien v. CareFlite*, No. 02–12–00039–CV, 2012 WL 2579525, at *3 (Tex. App.—Fort Worth July 5, 2012, no pet.) (mem. op.).

4

use of her personal and private message postings on Facebook "that no one can access except the person to whom it was sent" invaded her common law right of privacy. Roberts asserted two different invasion of privacy torts: public disclosure of private facts and intrusion upon her seclusion.[5] Roberts asserted that CareFlite's invasion of her privacy caused her to lose her job, resulting in damages.

In CareFlite's no-evidence motion on Roberts's invasion of privacy claims, it set out the elements for public disclosure of private facts and for intrusion on seclusion and asserted that Roberts had no evidence on any of these elements. In its traditional motion on the intrusion on seclusion claim, CareFlite asserted that it had negated the element of intrusion; that as a matter of law, the subject of Roberts's Facebook posting was not within the zone of her seclusion, solitude, and private affairs; and that as a matter of law, CareFlite's acts were not highly offensive to a reasonable person. With its motion, CareFlite attached, among other evidence, excerpts from Roberts's deposition; the CareFlite employee handbook; the Facebook exchanges between Roberts and Calvert; and the email from Roberts to Sumien.

In her response, Roberts asserted that "[t]he rights of CareFlite employees to discuss in private the issues of patient restraints which affected their safety

---

[5]See Wilhite v. H.E. Butt Co., 812 S.W.2d 1, 6 (Tex. App.—Corpus Christi 1991, no writ) (discussing the different torts recognized in Texas as invasion of privacy), abrogated in part by Cain v. Hearst Corp., 878 S.W.2d 577, 579 (Tex. 1994) (holding that Texas does not recognize the tort of false light).

5

and even their very lives clearly outweigh any issues of public concern in favor of prospective patients." The trial court granted summary judgment for CareFlite, and Roberts now appeals.

In an appeal from a traditional summary judgment, the issue is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[6] A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[7] Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue.[8]

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.[9] The motion must specifically state the elements for which there is no evidence.[10] The trial court must grant the motion unless the

---

[6]Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[7]*Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

[8]*Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999).

[9]Tex. R. Civ. P. 166a(i).

[10]*Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

nonmovant produces summary judgment evidence that raises a genuine issue of material fact.[11]  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.[12]

We review a summary judgment de novo.[13]  We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[14]  We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[15]

In Roberts's sole issue on appeal, she contends that the trial court erred by granting summary judgment on her claim for invasion of privacy by intrusion upon seclusion.  We first consider whether the trial court erred by granting no-evidence summary judgment for CareFlite.[16]

---

[11]See Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

[12]*Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004)

[13]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[14]*Mann*, 289 S.W.3d at 848.

[15]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[16]See *Lindley v. McKnight*, 349 S.W.3d 113, 123 (Tex. App.—Fort Worth 2011, no pet.) ("When a party moves for both a traditional and a no-evidence

7

Under Texas law, "an unwarranted invasion of the right of privacy constitutes a legal injury for which a remedy will be granted."[17] The Supreme Court of Texas has expressly recognized the two separate torts relating to the invasion of one's privacy that Roberts asserted in the trial court: intrusion upon seclusion and public disclosure of embarrassing facts.[18] The tort of intrusion upon seclusion has two elements: "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person."[19] In its no-evidence motion, CareFlite asserted that no evidence supported either element of Roberts's claim.

In our review of Roberts's brief, we did not find where Roberts directs this court to what summary judgment evidence she produced to raise a fact issue on these elements. Instead, Roberts raises arguments that do not relate to the elements of her claim or the evidence to support those elements. Roberts first argues that the Supreme Court "has recently given a very broad interpretation of employee privacy rights" in its recent opinion in *Texas Comptroller of Public*

---

summary judgment, we generally first review the trial court's summary judgment under no-evidence standards.").

[17]*Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973).

[18]*Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994) (recognizing the torts of intrusion upon seclusion and public disclosure of embarrassing private facts and declining to recognize the tort of false light).

[19]*Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993).

8

*Accounts*.[20] She notes that the court in that case "weighed the privacy rights of State employees with the need of the public to know, and found in favor of the employees." Roberts then argues that in this case, the rights of CareFlite employees to discuss in private the issues of patient restraints that affect their safety outweigh any issues of public concern. That case did address the privacy rights of state employees, but in the context of whether the Texas Public Information Act[21] required disclosure of the birth dates of state employees or whether the information was exempted from disclosure under a provision exempting information from an employee's personnel file, "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[22] The court applied a balancing test, weighing the employees' right of privacy against the purpose of the Public Information Act.[23]

In this case, there was no allegation that CareFlite or any government entity disclosed or intended to disclose Roberts's personal information to the public under a request for public information, and the tort of intrusion upon seclusion does not depend upon whether a person's private information had

---

[20]*Tex. Comptroller of Pub. Accounts v. Att'y Gen. of Tex.*, 354 S.W.3d 336, 348 (Tex. 2010).

[21]Tex. Gov't Code Ann. §§ 552.001–.353 (West 2012).

[22]*Tex. Comptroller*, 354 S.W.3d at 353.

[23]*Id.* at 349.

been disclosed to another.[24]  Thus, the balancing test performed by the *Texas Comptroller* court has no application in this case, where the question is whether CareFlite improperly intruded upon Roberts's seclusion and not whether information was exempted from public disclosure.

Roberts next argues that the National Labor Relations Board has held that an employer cannot fire employees for engaging in concerted workplace related discussions on Facebook by posting comments about working conditions. Roberts appealed from the summary judgment as to her intrusion upon seclusion claim, not her wrongful termination claim.  Roberts's argument about whether CareFlite could fire her for her Facebook comments is irrelevant to the question of whether Roberts produced sufficient summary judgment evidence to raise a fact issue on the challenged elements of her intrusion upon seclusion claim.

Finally, Roberts asserts that CareFlite was "out to get" her and that "[t]he claim that the public saw [Roberts's] email post is strictly an 'in-house, put-up' affair by CareFlite management."  The questions of whether CareFlite management was indeed "out to get" Roberts and of whether the public saw the email exchange between Calvert and Roberts, Roberts's wall posting, or her email to Sumien are irrelevant to the question of whether Roberts produced sufficient summary judgment evidence on her claim.  The relevant inquiry is not

_____

[24]*See Clayton v. Richards*, 47 S.W.3d 149, 153 (Tex. App.—Texarkana 2001, pet. denied) (recognizing that liability for intrusion upon seclusion does not turn on publication of any kind and that the core of the offense is prying into the private domain of another); *see also Sumien*, 2012 WL 2579525, at *3.

whether Roberts produced evidence relating to the ability of the public to see Roberts's writings or whether CareFlite was "out to get" Roberts. Rather, the inquiry is whether CareFlite intentionally intruded upon Robert's solitude, seclusion, or private affairs or concerns and, if it did so, whether such intrusion would be highly offensive to a reasonable person.

As we have noted, Roberts did not direct this court to any evidence she produced to raise a fact issue on whether CareFlite intruded upon her seclusion.[25] Roberts attached over 350 pages of summary judgment evidence to her response, and we are not required to sift through the record to determine what part of this record, if any, relates to her intrusion upon seclusion claim.[26] Roberts makes no argument about why CareFlite's review of Roberts's messages to Calvert or of her comments on Schoenhardt wall—comments that could be viewed by third parties—constituted an intrusion upon Roberts's seclusion,[27] and she cites to no cases that would support such an argument. And in the trial court, Roberts's response to CareFlite's no-evidence motion

---

[25]See Tex. R. App. P. 38.1(i) (requiring briefs to contain appropriate citations to the record).

[26]See Hall v. Stephenson, 919 S.W.2d 454, 467 (Tex. App.—Fort Worth 1996, writ denied) ("We are not required to search a voluminous record, with no guidance from Hall, to see if an issue of material fact was raised.").

[27]See, e.g., Restatement (Second) of Torts § 652B cmt. c (1977) (stating that a defendant is liable for intrusion upon seclusion "only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs" and that there is no liability for observing or photographing someone who is out in public "and open to the public eye").

11

consisted of essentially the same irrelevant arguments that she makes now on appeal. She did not point out to the trial court what evidence she had included with her motion that she contended raised a fact issue on the elements of intrusion upon seclusion.[28] Accordingly, we overrule Roberts's sole issue and hold that the trial court did not err by granting no-evidence summary judgment for CareFlite on this claim. We therefore need not consider whether the trial court erred by granting CareFlite's traditional summary judgment motion.

Having overruled Roberts's sole issue, we affirm the trial court's judgment.

LEE ANN DAUPHINOT<br>
JUSTICE

PANEL: DAUPHINOT, WALKER, and GABRIEL, JJ.

DELIVERED: October 4, 2012

---

[28]*See* Tex. R. Civ. P. 166a(i) & cmt. (requiring the trial court to grant a no-evidence motion meeting the rule's requirements unless the non-movant produces summary judgment evidence raising a genuine issue of material fact and stating that the non-movant's response need not marshall its proof but should point out evidence that raises a fact issue on the challenged elements).