02-12-105-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00105-CV

 

 


 
 
 Janis E. Roberts
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 CareFlite
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 236th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellant Janis
E. Roberts sued her former employer Appellee CareFlite for unlawful termination
under Sabine Pilot[2] and for invasion of
privacy.  CareFlite filed a combined traditional and no-evidence motion for
summary judgment, which the trial court granted without specifying the grounds.
 In one issue, Roberts now appeals the grant of summary judgment on her claim
of invasion of privacy by intrusion on seclusion.  Because we hold that the
trial court did not err by granting summary judgment for CareFlite, we affirm
the trial court’s judgment.

CareFlite
employed Roberts as a paramedic.  Roberts was “friends” on the website Facebook.com
with fellow CareFlite paramedic Robert Sumien and CareFlite helicopter pilot
Scott Schoenhardt.  Roberts posted on the Facebook wall of Schoenhardt that she
had transported a patient who needed restraining and that she wanted to slap
the patient.

Sheila
Calvert is a compliance officer with CareFlite.  Her sister, Delicia Haynes, is
a CareFlite member.  Haynes saw Roberts’s wall posting and notified Calvert. 
Calvert sent a message to Roberts through Facebook.  In her message, Calvert
stated:

I just wanted to remind you that the public sees your
posts.  People outside of CareFlite and outside of EMS.  In fact, my sister saw
your post to Scott Schoenhardt where you stated you wanted to slap a patient[,]
and she thought she wouldn’t want anyone such as that taking care of her and
made the comment that maybe she didn’t want to renew her CareFlite membership.  People
you don’t expect to see your posts do.  I’ll bet Scott has many friends in
EMS[,] and all any of them would have to do is a screen shot and send it in to
the state and you could be looking at a suspension of your EMS license and
fines.  Believe me, I’m not trying to come down on you about this.  I’m trying
to help you realize that people out there are losing their jobs and livelihood
because of such posts[,] and I don’t want to see that happen to you.  If you
don’t believe me, just google it or if you like I can send you some links to
articles.  I hope you will consider removing that post.

Roberts
responded with a message to Calvert that stated:

Yeah, whatever.  YOU weren’t there.  Whenever I have to
have a firefighter ride in with me because of a patient’s attitude, and I fear
for MY safety, I truly believe a patient needs an attitude adjustment.  Think
about that the next time YOU correct someone!!

Calvert
responded to Roberts, again with a message sent through Facebook’s messaging
feature, stating:

I was trying to be nice about the situation and provide
you a courteous reminder of the regulations in which you practice in the state
and the public’s perception.  [Rule 157.36(b)(28) of the Texas Administrative
Code[3]] states you cannot
engage in activities which betray[] the public’s trust in EMS.  I believe your
comment could have done that.  Additionally, CareFlite has policies against
employees calling into question our honesty, integrity[,] or reputation.  I
understand you had a difficult call and patient.  I’ve also had my share of those.
 That information should not be broadcasted[,] however.  I can show you an
article where a Kansas medic had his license suspended for 90 days, tons of
legal bills, and had to bag groceries during that time because he posted a
derogatory remark about his obese patient.  As far as me “thinking about that
before I correct someone[,]” . . . I’m the Compliance Officer for CareFlite[,]
and it’s my job.  We can have that conversation later and off [Facebook].

Roberts
responded with a message stating, “[By the way], I didn’t slap the patient, I
was not rude to the family OR the patient and the call went very smoothly,
thank you for asking.”  Roberts did delete her comment from Schoenhardt’s wall.

Roberts
later posted on her own Facebook wall, stating

Yes, I DO get upset on some calls when my patient goes
off in the house and I have to have a firefighter ride in with me because I
fear for MY own safety.  I think that is a valid excuse for wanting to use some
sort of restraints.  Just saying!!

Sumien
then posted a comment on this post, which stated, “Yeah like a boot to the head
. . . . . . ;^) Seriously yeah restraints or actual HELP from PD instead of the
norm.”

Roberts
sent Sumien an email in which she posted the text from the Facebook message
exchange she had had with Calvert.  She sent the message with the subject line,
“Check this shit out.”

About
a week later, Haynes (Calvert’s sister) sent an email to CareFlite CEO James
Swartz.  In the email, Haynes told Swartz about Roberts’s Facebook post about
wanting to slap a patient and about Sumien’s comment about “a boot to the
head.”  CareFlite terminated Roberts’s employment a few days later.  As grounds
for termination, CareFlite noted Roberts’s post about “feeling like slapping a
patient to get control of them” and stated that her response to Calvert was
“unprofessional and insubordinate.”[4]

Roberts
asserted that the real reason that CareFlite terminated her employment was that
she had reported an employee for starting an IV on a patient without the proper
certification for performing such a procedure, which Roberts asserted was a
criminal act, and that she refused to participate in a cover up.  In Roberts’s
invasion of privacy claim, she asserted that CareFlite’s use of her personal
and private message postings on Facebook “that no one can access except the
person to whom it was sent” invaded her common law right of privacy.  Roberts
asserted two different invasion of privacy torts: public disclosure of private
facts and intrusion upon her seclusion.[5]  Roberts
asserted that CareFlite’s invasion of her privacy caused her to lose her job,
resulting in damages.

In
CareFlite’s no-evidence motion on Roberts’s invasion of privacy claims, it set
out the elements for public disclosure of private facts and for intrusion on seclusion
and asserted that Roberts had no evidence on any of these elements.  In its
traditional motion on the intrusion on seclusion claim, CareFlite asserted that
it had negated the element of intrusion; that as a matter of law, the subject
of Roberts’s Facebook posting was not within the zone of her seclusion, solitude,
and private affairs; and that as a matter of law, CareFlite’s acts were not
highly offensive to a reasonable person.  With its motion, CareFlite attached,
among other evidence, excerpts from Roberts’s deposition; the CareFlite
employee handbook; the Facebook exchanges between Roberts and Calvert; and the
email from Roberts to Sumien.

In
her response, Roberts asserted that “[t]he rights of CareFlite employees to
discuss in private the issues of patient restraints which affected their safety
and even their very lives clearly outweigh any issues of public concern in favor
of prospective patients.”  The trial court granted summary judgment for
CareFlite, and Roberts now appeals.

In
an appeal from a traditional summary judgment, the issue is whether the movant
met the summary judgment burden by establishing that no genuine issue of
material fact exists and that the movant is entitled to judgment as a matter of
law.[6] 
A defendant who conclusively negates at least one essential element of a cause
of action is entitled to summary judgment on that claim.[7] 
Once the defendant produces sufficient evidence to establish the right to
summary judgment, the burden shifts to the plaintiff to come forward with
competent controverting evidence that raises a fact issue.[8]

After
an adequate time for discovery, the party without the burden of proof may,
without presenting evidence, move for summary judgment on the ground that there
is no evidence to support an essential element of the nonmovant’s claim or
defense.[9] 
The motion must specifically state the elements for which there is no evidence.[10]  The trial court
must grant the motion unless the nonmovant produces summary judgment evidence
that raises a genuine issue of material fact.[11] 
If the nonmovant brings forward more than a scintilla of probative evidence
that raises a genuine issue of material fact, then a no-evidence summary
judgment is not proper.[12]

We
review a summary judgment de novo.[13]  We consider the evidence
presented in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
evidence contrary to the nonmovant unless reasonable jurors could not.[14] 
We indulge every reasonable inference and resolve any doubts in the nonmovant’s
favor.[15]

In
Roberts’s sole issue on appeal, she contends that the trial court erred by
granting summary judgment on her claim for invasion of privacy by intrusion
upon seclusion.  We first consider whether the trial court erred by granting
no-evidence summary judgment for CareFlite.[16]

Under
Texas law, “an unwarranted invasion of the right of privacy constitutes a legal
injury for which a remedy will be granted.”[17]  The
Supreme Court of Texas has expressly recognized the two separate torts relating
to the invasion of one’s privacy that Roberts asserted in the trial court:
intrusion upon seclusion and public disclosure of embarrassing facts.[18] 
The tort of intrusion upon seclusion has two elements: “(1) an intentional
intrusion, physically or otherwise, upon another’s solitude, seclusion, or
private affairs or concerns, which (2) would be highly offensive to a
reasonable person.”[19]  In
its no-evidence motion, CareFlite asserted that no evidence supported either
element of Roberts’s claim.

In
our review of Roberts’s brief, we did not find where Roberts directs this court
to what summary judgment evidence she produced to raise a fact issue on these
elements.  Instead, Roberts raises arguments that do not relate to the elements
of her claim or the evidence to support those elements.  Roberts first argues
that the Supreme Court “has recently given a very broad interpretation of
employee privacy rights” in its recent opinion in Texas Comptroller of
Public Accounts.[20] 
She notes that the court in that case “weighed the privacy rights of State
employees with the need of the public to know, and found in favor of the
employees.”  Roberts then argues that in this case, the rights of CareFlite
employees to discuss in private the issues of patient restraints that affect
their safety outweigh any issues of public concern.  That case did address the
privacy rights of state employees, but in the context of whether the Texas
Public Information Act[21]
required disclosure of the birth dates of state employees or whether the
information was exempted from disclosure under a provision exempting
information from an employee’s personnel file, “the disclosure of which would
constitute a clearly unwarranted invasion of personal privacy.”[22]  The
court applied a balancing test, weighing the employees’ right of privacy
against the purpose of the Public Information Act.[23]

In
this case, there was no allegation that CareFlite or any government entity
disclosed or intended to disclose Roberts’s personal information to the public
under a request for public information, and the tort of intrusion upon
seclusion does not depend upon whether a person’s private information had been
disclosed to another.[24] 
Thus, the balancing test performed by the Texas Comptroller court has no
application in this case, where the question is whether CareFlite improperly
intruded upon Roberts’s seclusion and not whether information was exempted from
public disclosure.

Roberts
next argues that the National Labor Relations Board has held that an employer
cannot fire employees for engaging in concerted workplace related discussions
on Facebook by posting comments about working conditions.  Roberts appealed
from the summary judgment as to her intrusion upon seclusion claim, not her
wrongful termination claim.  Roberts’s argument about whether CareFlite could
fire her for her Facebook comments is irrelevant to the question of whether
Roberts produced sufficient summary judgment evidence to raise a fact issue on
the challenged elements of her intrusion upon seclusion claim.

Finally,
Roberts asserts that CareFlite was “out to get” her and that “[t]he claim that
the public saw [Roberts’s] email post is strictly an ‘in-house, put-up’ affair
by CareFlite management.”  The questions of whether CareFlite management was
indeed “out to get” Roberts and of whether the public saw the email exchange
between Calvert and Roberts, Roberts’s wall posting, or her email to Sumien are
irrelevant to the question of whether Roberts produced sufficient summary judgment
evidence on her claim.  The relevant inquiry is not whether Roberts produced
evidence relating to the ability of the public to see Roberts’s writings or
whether CareFlite was “out to get” Roberts.  Rather, the inquiry is whether
CareFlite intentionally intruded upon Robert’s solitude, seclusion, or private
affairs or concerns and, if it did so, whether such intrusion would be highly
offensive to a reasonable person.

As
we have noted, Roberts did not direct this court to any evidence she produced
to raise a fact issue on whether CareFlite intruded upon her seclusion.[25]  Roberts
attached over 350 pages of summary judgment evidence to her response, and we
are not required to sift through the record to determine what part of this
record, if any, relates to her intrusion upon seclusion claim.[26]  Roberts
makes no argument about why CareFlite’s review of Roberts’s messages to Calvert
or of her comments on Schoenhardt wall—comments that could be viewed by third
parties—constituted an intrusion upon Roberts’s seclusion,[27] and
she cites to no cases that would support such an argument.  And in the trial
court, Roberts’s response to CareFlite’s no-evidence motion consisted of
essentially the same irrelevant arguments that she makes now on appeal.  She
did not point out to the trial court what evidence she had included with her
motion that she contended raised a fact issue on the elements of intrusion upon
seclusion.[28]  Accordingly,
we overrule Roberts’s sole issue and hold that the trial court did not err by
granting no-evidence summary judgment for CareFlite on this claim.  We
therefore need not consider whether the trial court erred by granting
CareFlite’s traditional summary judgment motion.

Having
overruled Roberts’s sole issue, we affirm the trial court’s judgment.

 

 

 

LEE ANN DAUPHINOT JUSTICE

 

PANEL: 
DAUPHINOT,
WALKER, and GABRIEL, JJ.

 

DELIVERED:  October 4, 2012

 



 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00105-CV

 

 


 
 
 Janis
 E. Roberts
  
  
 v.
  
  
 CareFlite
 
 
 §
  
 §
  
 §
  
 §
  
  
 
 
 From the 236th District
 Court
  
 of
 Tarrant County (236-248006-10)
  
 October
 4, 2012
  
 Opinion
 by Justice Dauphinot
 
 


 

JUDGMENT

 

This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

It
is further ordered that Appellant Janis E. Roberts shall pay all of the costs
of this appeal, for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

By_________________________________

   
Justice Lee Ann Dauphinot

 









[1]See Tex. R. App. P. 47.4.





[2]Sabine Pilot Serv., Inc. v. Hauck, 687
S.W.2d 733 (Tex. 1985).





[3]25 Tex. Admin. Code §
157.36(b)(28) (2012) (Tex. Dep’t of State Health Serv., Criteria for Denial and
Disciplinary Actions for EMS Personnel and Applicant and Voluntary Surrender of
a Certificate or License).





[4]Sumien’s employment was also terminated because of his comments on
Facebook, and he also sued CareFlite and appealed from the trial court’s
judgment in favor of CareFlite.  This court affirmed
the trial court’s judgment in that case.  Sumien v. CareFlite, No.
02–12–00039–CV, 2012 WL 2579525, at *3 (Tex. App.—Fort Worth July 5, 2012, no
pet.) (mem. op.).





[5]See Wilhite v. H.E. Butt Co., 812
S.W.2d 1, 6 (Tex. App.—Corpus Christi 1991, no writ) (discussing the different
torts recognized in Texas as invasion of privacy), abrogated in part by Cain
v. Hearst Corp., 878 S.W.2d 577, 579 (Tex. 1994) (holding that Texas does not
recognize the tort of false light).





[6]Tex. R. Civ. P. 166a(c); Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).





[7]Frost Nat’l Bank v. Fernandez, 315
S.W.3d 494, 508 (Tex. 2010).





[8]Van v. Pena, 990 S.W.2d 751, 753 (Tex.
1999).





[9]Tex. R. Civ. P. 166a(i).





[10]Id.; Timpte Indus., Inc. v. Gish,
286 S.W.3d 306, 310 (Tex. 2009).





[11]See Tex. R. Civ. P. 166a(i) &
cmt.; Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008).





[12]Smith v. O’Donnell, 288 S.W.3d 417,
424 (Tex. 2009); King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex.
2003), cert. denied, 541 U.S. 1030 (2004)





[13]Travelers Ins. Co. v. Joachim, 315
S.W.3d 860, 862 (Tex. 2010).





[14]Mann, 289 S.W.3d at 848.





[15]20801, Inc. v. Parker, 249 S.W.3d 392,
399 (Tex. 2008).





[16]See Lindley v. McKnight, 349 S.W.3d
113, 123 (Tex. App.—Fort Worth 2011, no pet.) (“When a party moves for both a
traditional and a no-evidence summary judgment, we generally first review the
trial court’s summary judgment under no-evidence
standards.”).





[17]Billings v. Atkinson, 489 S.W.2d 858,
860 (Tex. 1973).





[18]Cain v. Hearst Corp., 878 S.W.2d 577,
578 (Tex. 1994) (recognizing the torts of intrusion upon seclusion and public
disclosure of embarrassing private facts and declining to recognize the tort of
false light).





[19]Valenzuela v. Aquino, 853 S.W.2d 512,
513 (Tex. 1993).





[20]Tex. Comptroller of Pub. Accounts v. Att’y Gen. of Tex., 354 S.W.3d 336, 348 (Tex. 2010).





[21]Tex. Gov’t Code Ann. §§ 552.001–.353
(West 2012).





[22]Tex. Comptroller, 354 S.W.3d at 353.





[23]Id. at 349.





[24]See Clayton v. Richards, 47 S.W.3d 149, 153 (Tex. App.—Texarkana 2001, pet. denied)
(recognizing that liability for intrusion upon seclusion does not turn on
publication of any kind and that the core of the offense is prying into the
private domain of another); see also Sumien, 2012 WL 2579525, at
*3.





[25]See Tex. R. App. P. 38.1(i) (requiring
briefs to contain appropriate citations to the record).





[26]See Hall v. Stephenson, 919 S.W.2d
454, 467 (Tex. App.—Fort
Worth 1996, writ denied) (“We are not required to search a voluminous record,
with no guidance from Hall, to see if an issue of material fact was raised.”).





[27]See, e.g., Restatement (Second) of
Torts § 652B cmt. c (1977) (stating that a defendant is liable for intrusion
upon seclusion “only when he has intruded into a private place, or has
otherwise invaded a private seclusion that the plaintiff has thrown about his
person or affairs” and that there is no liability for observing or
photographing someone who is out in public “and open to the public eye”).





[28]See Tex. R. Civ. P. 166a(i) & cmt.
(requiring the trial court to grant a no-evidence motion meeting the rule’s
requirements unless the non-movant produces summary judgment evidence raising a
genuine issue of material fact and stating that the non-movant’s response need
not marshall its proof but should point out evidence that raises a fact issue
on the challenged elements).