In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00418-CV
_____

ASHLEY MELTON, Appellant

V.

WILBUR HAH, Appellee

On Appeal from the 128th District Court
Orange County, Texas
Trial Cause No. A220289-C

MEMORANDUM OPINION

In this interlocutory appeal, we are asked to decide the applicability of the Texas Citizens' Participation Act (TCPA) to multiple causes of action arising from a patient's social media postings made about her physician. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011. The trial court failed to rule on Appellant Ashley Melton's TCPA Motion to Dismiss Appellee Wilbur Hah's claims for defamation, business disparagement, invasion of privacy, breach of contract, and injunctive relief

1

within the statutory time frame, and the Motion was denied by operation of law. *See id.* §§ 27.005(a), 27.008(a). In twelve issues, Melton contends the trial court erred by implicitly denying her TCPA Motion to Dismiss because: (1) the TCPA applies to Hah's allegations made against her; (2) once the burden of proof shifted, Hah failed to present clear and specific evidence establishing a prima facie case for each of his claims; and (3) even if he did establish a prima facie case, she established affirmative defenses for those claims. For the reasons discussed below, we will reverse the trial court's denial of Melton's TCPA Motion to Dismiss and remand for proceedings consistent with this opinion.

## I. Background

In 2020, Melton approached Hah, a board-certified cosmetic surgeon, to perform liposuction and a "tummy tuck" on her. As part of the preoperative process, Melton and Hah signed a "Contract of Reasonable Expectations." In that document, Melton acknowledged that she was undergoing an elective procedure that was not medically necessary and that she should not have unrealistic expectations. The document also contained a provision addressing "social media and online content" that stated, "I agree not to post any defamatory, derogatory, mean spirited, or negative comments, reviews that is [sic] designed to damage the online reputation

2

regarding Dr. Hah, Dr. Chen-Hah or Beauty MDs, LLC team based on my perception of not having my cosmetic outcome expectations met."

After Melton underwent surgery, she and several other of Hah's patients began posting on social media about their experience with Hah. In August 2022, Hah sued Melton and three other patients in separate lawsuits. Hah alleged that Melton "contractually agreed[] to refrain . . . from posting false, defamatory, derogatory, mean-spirited or negative comments or reviews on social media designed to damage the Plaintiff's reputation or livelihood, or to interfere with Plaintiff's business relations with other patients." Hah further alleged he provided Melton "with informed, elective cosmetic services within such reasonable expectations and without any violation of the standard of care." Hah also claimed that in "direct violation of Defendant's agreement," she "published defamatory, derogatory, mean-spirited, or negative comments or reviews on social media[.]" He specifically claimed that Melton "published in a website labeled 'Botched Cosmetic Surgeries in Orange Texas' and 'Local Failed Cosmetic Surgeries' false, defamatory, derogatory, mean-spirited and negative materials on social media, intentionally, and with malice, designed to damage" his livelihood or reputation and interfere with his business relations with other patients, and that "Plaintiff is the only cosmetic surgeon

3

in Orange, Texas." Hah asserted claims for injunctive relief, breach of contract, defamation, invasion of privacy, and business disparagement.

In Melton's Original Answer to Hah's Petition,[1] Melton pleaded that she underwent a seven-hour surgery, and after suffered from nerve pain and a belly button that would not heal. She consulted a board-certified plastic surgeon after Hah performed surgery, who told her she would need a "complete new tummy tuck." Melton stated that she and several other of Hah's patients began posting their experiences on social media, because they "wanted to share their stories" and "spread awareness and hopefully keep others from going through the trauma[.]" Melton claimed she first posted her story and those from a few other women on TikTok but removed them when she received a cease-and-desist letter from Hah's attorney. Melton said she continued to receive messages from other women, and in August 2022, another patient created a Facebook group called "Botched in Orange, TX." There, several people posted stories anonymously and "never mentioned the doctor's name." According to Melton, "Hah's name was not mentioned until his own wife decided to start posting in this group making it known. The group ended up being reported and shut down by an unknown person. A few days later four of us were served with a lawsuit." In her Original Answer and Amended Answer, Melton

---

[1]Melton filed her Original Answer after her TCPA Motion to Dismiss.

4

answered with a general denial and raised the following affirmative defenses, among others: 1) there is a lack of consideration or failure of consideration for the contract; 2) Melton's statements about Hah were true; 3) any opinions Melton gave about Hah are unactionable and do not support a claim for defamation or disparagement; and 4) Melton's statements are protected speech and an exercise of her right of association and are constitutionally protected by the TCPA.

Melton filed an Anti-SLAPP Motion to Dismiss and for Attorney's Fees under the TCPA, claiming that Hah filed the lawsuit to "chill Defendant's exercise of her right to free speech[] and right of association." Melton supported her TCPA Motion to Dismiss with her affidavit and those of the three other patients Hah sued, April Gage, Courtney Chesson, and Lauren Martynuik Robinson. Melton argued the TCPA covered Hah's claims against her, because the communications that form the basis of his claims occurred in connection with a matter of public concern–the manner in which a physician performed surgery on his patients in the Orange County area–so, they relate to a matter of social or other interest to the community. She also argued that Hah's lawsuit was in response to her exercising her right of association. Specifically, she contended the supporting affidavits established that the Facebook postings Hah complained about have "a common theme and represent statements of

persons with a common interest in the results of surgery, which is clearly a matter of public concern."

Melton further asserted that after she showed the TCPA applied, Hah failed to establish by clear and specific evidence a prima facie case for each essential element of his claims and that she could establish an affirmative defense. In her affidavit, Melton averred that she was familiar with the Facebook Groups "Botched Surgery in Orange Texas" and "Locally Failed Cosmetic Surgeries" referenced in Hah's Petition. She further averred that to the extent she discussed Hah's treatment of her with Gage, Chesson, and Robinson, or posted materials in a Facebook Group, she did so "in an effort to collectively express, pursue or defend our common interests relating to the manner in which Dr. Hah has treated patients like myself and the other three people that he has sued." Robinson, Gage, and Chesson's affidavits contained identical language, but Chesson and Gage denied they ever posted anything to the specific Facebook Groups Hah mentioned in his Petition. Melton also supplemented her Motion to Dismiss by attaching a corrected affidavit from Chesson. Melton filed a Second Supplement to the Anti-SLAPP Motion to Dismiss and for Attorney's Fees that addressed with greater particularity why this is a matter of public concern and included counsel's affidavit.

Hah filed his initial Response to Defendant's TCPA Motion to Dismiss, which did not include an affidavit. In his Response, Hah objected to any evidence offered by Melton to the extent she is not an expert, plus complained Melton failed to present evidence of attorney's fees. Hah argued the TCPA does not apply, and the 2019 amendments removed "good, product, or service in marketplace" from the definition of "matter of public concern." Hah characterized this case as "a private contract dispute to which the TCPA does not apply[.]" Hah contended that Melton contracted with him to perform elective cosmetic services, and she agreed to refrain from posting . . . negative comments or reviews on social media[.]" Hah alleged he performed under the contract by completing the surgery, but Melton breached the contract, and he incorporated photos and TikTok posts in the body of his Response. Finally, he argued that Melton breached her contract with him by posting on social media. However, Hah only asserted that he had shown a prima facie case for his breach of contract claim, but he did not address the essential elements for any cause of action. Hah attached a document entitled "Contract of Reasonable Expectations" signed by Melton where she agreed not to post negative comments or reviews on social media.

Hah also filed a First Amended Response to Melton's Motion to Dismiss. The Amended Response included his previous objections that Melton was not an expert

and could not say whether he deviated from the standard of care. His Amended Response contained similar arguments about why this was not a matter of public concern and characterized the action as a private contract dispute. He also asserted that Melton posted photos showing that she was happy with the results Hah provided and included the photos. Hah claimed that Melton later returned to his office demanding a refund and secretly recorded him and his office without his permission. Hah alleged that when he failed to provide Melton a refund, she embarked on a "social media campaign" and conspired with the other patients to "post[] false, defamatory, derogatory, mean-spirited or negative comments or reviews on social media designed to damage Plaintiff's reputation or livelihood, or to interfere with Plaintiff's business relations with other patients on controversial social media site Tik Tok." Hah claimed Melton breached the agreement and posted negative, defamatory, and derogatory comments with actual malice. Hah also asserted that Melton and the three other patients he sued published photographs of him, his patients, and his office without permission. Hah argued the court need not address the TCPA's applicability, because he established a prima facie case for his breach of contract claim, to which Melton failed to establish an affirmative defense. As exhibits to his Amended Response, Hah again included the "Contract of Reasonable Expectations," a narrative by Hah dated February 2021 regarding his treatment of

Melton, his affidavit in which he complained that Melton breached their agreement after he performed the surgery and stated the comments and social media postings were true and correct copies, and his attorney's affidavit with billing invoices.

Hah's one-page narrative stated that Melton requested more surgery to remove excess skin, but he did not feel like it was safe, and he noted that she responded by threatening to sue him. Hah averred in his affidavit that he provided services "within the accepted standards of medical care[.]" He also averred that the four patients, including Melton, "each conspired to post false, defamatory, derogatory, mean-spirted, or negative comments or reviews on social media designed to damage my reputation, as depicted in the attached, which are true and correct copies of each's postings on social media[.]" His Amended Response also included additional screenshots of social media posts of photographs with the hashtags "botched," "botchedsurgery," "botchedplasticsurgery," and "False Advertising." Another TikTok screenshot with a photograph of Hah, stated, "Presenting the surgeon that botched my tummy tuck leaving me with not only excess skin but nerve damage, a tethered scar, and a leaky belly button!" There are also screenshots of postings on "What's Up Bridge City" that advised women

> who are interested in plastic surgery please do your research and use a Board Certified Plastic Surgeon! The COSMETIC surgeon in Orange who calls himself a plastic surgeon obviously has no clue what he's doing and is extremely overpriced! When I spoke to him about my

concerns and all the pain I was in, he was extremely rude. I am now having to pay a board certified plastic surgeon to fix the mess the cosmetic surgeon in Orange left me with! I would hate for someone else to go through what I'm dealing with! I've also recently found out that I'm not the only woman he has done this too (sic). I'm completely shocked this man is still in business!"

In an apparent response to another commenter, Melton wrote,

[H]e manages to have them all deleted! I've seen two board certified plastic surgeons who have told me this was his fault. I am not [sic] having to have a revision that is going to cost another $8,000 plus weeks of recovery. I had a friend who used him go with me and I also recorded the entire appointment.

In other posts, Melton noted that she did not post his name, but posted that "there's only one cosmetic surgeon in Orange[,]" and "I've already reported and hired an attorney[.]" Finally, she stated in a Facebook post,

I've been in the hospital because of what that man has done! He not only botched me but damaged me to the point that I needed surgery to repair what he did! I told him at my last follow up that I was in pain and he did not give a damn! I had a friend with me and I recorded the entire appointment! I'm not a stupid women [sic]! How dare you get on here and attack me when you have NO clue what you are talking about!

At the hearing, Hah sought to introduce a video he made and screenshots from the video. Melton objected to any evidence or testimony being taken at the hearing, and the trial court ruled she would not take testimony or admit the video as evidence. After the hearing, Melton and Hah filed letter briefs with the trial court to address the 2019 amendments and whether the TCPA applied. The trial court failed to rule

10

on Melton's Motion within thirty days from the date of filing, which functioned as a denial by operation of law. *See id*. §§ 27.005(a), 27.008(a). This interlocutory appeal followed. *See id.* §§ 27.008(b), 51.014(a)(12).

## II. Standard of Review

We review a trial court's denial of a TCPA motion to dismiss *de novo. See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018); *Walker v. Hartman*, 516 S.W.3d 71, 79–80 (Tex. App.—Beaumont 2017, pet. denied). We consider the pleadings, evidence we could consider under Rule 166a, and affidavits stating facts on which liability or any defense is based in the light most favorable to the nonmovant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *In re Lipsky*, 460 S.W.3d 579, 587 (Tex. 2015) (orig. proceeding); *see also Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Push Start Indus., LLC v. Hous. Gulf Energy Corp.*, No. 09-19-00290-CV, 2020 WL 7041567, at *3 (Tex. App.—Beaumont Nov. 30, 2020, no pet.) (mem. op.) (citations omitted). We also review *de novo* whether the parties met their burdens of proof under section 27.005 of the TCPA. *Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021) (citation omitted).

## III. Analysis

## A. TCPA Generally

The TCPA is meant "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *see also McLane Champions, LLC v. Hous. Baseball Partners LLC*, No. 21-0641, 2023 WL 4306378, at *4 (Tex. June 30, 2023) (citations omitted). The TCPA instructs courts to liberally construe it to ensure its stated purpose and intent are fully effectuated, but it "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions." Tex. Civ. Prac. & Rem. Code Ann. § 27.011(a), (b); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (citation omitted) (noting directive to liberally construe). Under the TCPA, a party may move to dismiss a "legal action" that is "based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.003. The TCPA defines the "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3); *see Montano v.*

*Cronan*, No. 09-20-00232-CV, 2021 WL 2963801, at *4 (Tex. App.—Beaumont July 15, 2021, no pet.) (mem. op.).

The TCPA "provides a three-step process for the dismissal of a 'legal action' to which it applies." *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021) (citing *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d). First, the movant bears the initial burden to show that the "legal action is based on or is in response to[]" the movant's exercise of: "(A) the right of free speech; (B) the right to petition; or (C) the right of association[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1)(A)–(C). If the movant establishes that the nonmovant's claim implicates one of these rights, the burden shifts to the plaintiff to "'establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Lipsky*, 460 S.W.3d at 587 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)). A "prima facie case" means "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* at 590 (citation omitted). It is the "'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004)). Clear and specific evidence means that the "plaintiff must provide enough detail to show the factual basis for its

13

claim." *Id.* at 591. Finally, if the nonmovant establishes their prima facie case, the burden shifts back to the movant to establish each essential element of an affirmative defense by a preponderance of the evidence. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018); *Coleman*, 512 S.W.3d at 899.

**B. Issues One, Two, and Three: TCPA Applicability**

In her first three issues, Melton argues that the TCPA applies since Hah's lawsuit implicated her right to free speech on a matter of public concern and her right of association. Hah responds that the 2019 TCPA amendments removed "a good, product, or service in the marketplace" from the definition of matter of public concern."

The TCPA defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). The TCPA further defines "matter of public concern" as:

> . . . a statement or activity regarding:
> (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;
> (B) a matter of political, social, or other interest to the community; or
> (C) a subject of concern to the public.

*Id.* § 27.001(7). The 2019 amendments removed "good, product, or service in the marketplace" from the definition of "matter of public concern," but the current version of the statute includes "a statement or activity regarding . . . a matter of . . . other interest to the community; or . . . a subject of concern to the public." Act of May 20, 2019, 86th Leg. R.S., ch. 378, § 1, 2019 Tex. Gen. Laws 684, 684 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)); *see also McLane Champions*, 2023 WL 4306378, at *5 (discussing 2019 amendments and changes to definition of "matter of public concern"). "The phrase 'matter of public concern' commonly refers to matters 'of political, social, or other concern to the community,' and a subject of general interest and of value and concern to the public, as opposed to purely private matters." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019) (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)); *Montano*, 2021 WL 2963801, at *4. Statements related to a physician's "professional competence and fitness to practice medicine" are "a subject matter that has consistently been recognized by Texas courts as a matter of public concern." *Rockman v. Ob Hospitalist Grp., Inc.*, No. 01-21-00383-CV, 2023 WL 3311548, at *12 (Tex. App.—Houston [1st Dist.] May 9, 2023, no pet. h.) (mem. op.) (citing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 510 (Tex. 2015)) (other citations omitted). As the Texas Supreme Court recently stated, "under the TCPA, the

communication on which the suit is based must have some relevance to the public audience[,]" and "the 'connection' between the communication and the matter of public concern must exist when the communication is made." *McLane Champions*, 2023 WL 4306378, at *7.

The record before us shows that Melton's posts were made in social media groups directed to a local community where Hah practiced medicine. He complained that the titles of the social media groups of "Botched in Orange, Texas" and "Local Failed Cosmetic Surgeries" made clear what the subject matter would be. Her posts, as well as those of the other patients he sued, addressed what she believed to be a negative surgical experience. Other courts have determined that publishing disparaging comments about a medical practice is a communication that constitutes "a matter of public concern." *See San Angelo Cmty. Med. Ctr., LLC v. Leon*, No. 03-19-00229-CV, 2021 WL 1680194, at *7 (Tex. App.—Austin Apr. 29, 2021, pet. filed) (mem. op.) (citations omitted) (concluding disparaging comments about medical practice was a matter of public concern); *Memorial Hermann Health Sys. v. Khalil*, No. 01-16-00512-CV, 2017 WL 3389645, at *5 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, pet. denied) (op. on reh'g) (mem. op.) (applying language in prior version of statute and concluding that comments about healthcare professional's competence were a matter of public concern); *see also Lippincott*, 462

16

S.W.3d at 510 (applying prior version of statute and concluding statements about a healthcare professional's competence related to matter of public concern under the TCPA). People accessed or visited the Facebook groups labeled "Botched Cosmetic Surgeries in Orange Texas" and "Local Failed Cosmetic Surgeries" which indicates the posts were of "interest to the community" or "a subject of concern to the public." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)(B), (C). Melton's posts did not simply address private business negotiations in an arms-length transaction, rather they explained what she described as her negative experience with a local surgeon, the posts referenced the alleged substandard quality of a health professional's treatment of patients, were made for reasons that relate to public health and safety, and were made to a public audience. *See Lippincott*, 462 S.W.3d at 509-10. As such, Melton's posts involved a "matter of public concern," and thus she exercised her right of free speech. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3).

Hah's primary complaint about Melton seems to be that she posted "mean-spirited or negative comments or reviews on social media." Further, notwithstanding certain enumerated exemptions, the TCPA applies to "a legal action against a person related to the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses." *Id.* § 27.010(b)(2). Melton posted material on social media

17

sites about the paid surgical services Hah provided and commented about her experience with those services. Hah's legal action against Melton was related to the "posting . . . of consumer opinions or commentary[.]" *See id.*

We conclude the TCPA applies to Hah's legal action against Melton as it involved the exercise of her right to speech and was related to the "posting . . . of consumer opinions or commentary[.]" *See id.* §§ 27.003(a), 27.010(b)(2). We sustain issue one. Based on our resolution of issue one, we need not address issues two and three. *See* Tex. R. App. P. 47.1 (requiring appellate court to hand down a written opinion as brief as practicable but addressing all issues necessary to final disposition of the appeal).

## C. Issues Four through Eight: Prima Facie Case for Each Cause of Action

In issues four through eight, Melton argues that Hah failed to establish by clear and specific evidence a prima facie case for each of his causes of action. Having concluded that the TCPA applies to Hah's legal action against Melton, we now turn to whether Hah met his burden to establish a prima facie case for each essential element of his causes of action by clear and specific evidence. *See Lipsky*, 460 S.W.3d at 587; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

## 1. Issue Four: Business Disparagement

In issue four, Melton asserts that Hah failed to meet his burden of establishing a prima facie case for his business disparagement claim. "The torts of defamation and business disparagement are alike in that 'both involve harm from the publication of false information.'" *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020) (quoting *Lipsky*, 460 S.W.3d at 591). A notable distinction is that "[d]efamation serves to protect one's interest in character and reputation, whereas disparagement protects economic interests by providing a remedy for pecuniary losses from slurs affecting the marketability of goods and services." *Id.* (citation omitted). "The publication of a disparaging statement concerning the product of another is actionable when (1) the statement is false, (2) published with malice, (3) with the intent that the publication causes pecuniary loss or the reasonable recognition that it will, and (4) pecuniary loss does in fact result." *Id.* at 417 (citing *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)).

In his Response and Amended Response to Melton's TCPA Motion to Dismiss, despite attaching screenshots and photographs, Hah does not address the essential elements of his business disparagement claim or how any of Melton's

purported statements on social media supported that cause of action. Rather, he focuses solely on his breach of contract cause of action.

Hah complains that Melton did not offer expert testimony to opine that Hah acted below the standard of care. If Melton filed a medical malpractice claim, we agree Melton would be required to comply with the Texas Medical Liability Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001–.507. However, Melton has not sued Hah for medical malpractice in this matter. Rather, Hah sued Melton for claims as outlined above, the TCPA applies, and Hah has the burden to show a prima facie case for his business disparagement cause of action by clear and specific evidence. *See id.* § 27.005(b)–(c); *Lipsky*, 460 S.W.3d at 590–92. Hah has failed to allege or state how he suffered a pecuniary loss in his Responses or provide any evidence of a pecuniary loss. *See Innovative Block*, 603 S.W.3d at 417 (including resulting pecuniary loss as a requisite element of business disparagement). Hah failed to establish a sufficient causal connection between any challenged statement Melton made and any particular loss. *See Landry's, Inc.*, 631 S.W.3d at 54 (noting same in the context of business disparagement claim and concluding party failed to meet its burden of establishing prima facie case). Since business disparagement is solely concerned with economic harm, "proof of special damages is 'a fundamental element of the tort.'" *Innovative Block*, 603 S.W.3d at 417 (quoting *Waste Mgmt. of*

20

*Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014)). His affidavit did not state any specific damages that he sustained because of Melton's postings. *See Lipsky*, 460 S.W.3d at 592–93 (concluding that general averments that non-movant "suffered direct pecuniary and economic losses" absent facts illustrating how defendant's remarks caused the losses were insufficient to meet the TCPA requirement of clear and specific evidence of damages); *Camp*, 2017 WL 3378904, at *7.

We conclude that Hah failed to establish a prima facie case of his business disparagement claim by clear and specific evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Innovative Block*, 603 S.W.3d at 417; *Lipsky*, 460 S.W.3d at 592–93. We sustain issue four.

**2. Issue Five: Defamation**

Melton argues in issue five that Hah failed to meet his burden to establish a prima facie case for his defamation claim. For a defamation claim, a plaintiff must show (1) the defendant published a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the required degree of fault, at least amounting to negligence, and (4) in some cases, damages. *Innovative Block*, 603 S.W.3d at 417 (citing *Lipsky*, 460 S.W.3d at 593). "A defamatory statement is one that 'tends [] to harm the reputation of another as to lower him in the estimation of

21

the community or to deter third persons from associating or dealing with him.'" *Id.* (quoting R<small>ESTATEMENT</small> (S<small>ECOND</small>) <small>OF</small> T<small>ORTS</small> § 559 (A<small>M.</small> L. I<small>NST.</small> 1977)) (other citation omitted).

On appeal, Hah contends for the first time that Melton's statements constituted defamation *per se* and as such Hah had no obligation to show proof of damages. A party seeking to recover on a defamation claim must plead and prove damages, unless the defamatory statements are defamatory *per se. Lipsky*, 460 S.W.3d at 593. "A statement constitutes defamation *per se* if it 'injures a person in his office, profession, or occupation.'" *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013) (quoting *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 581 (Tex. App.–Austin 2007, pet. denied)). "Historically in Texas, defamation *per se* claims allow the jury to presume the existence of general damages without proof of actual injury." *Id.* at 65 (citations omitted). "In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Lipsky*, 460 S.W.3d at 591. Defamation *per se* refers to statements that are so obviously harmful that general damages may be presumed. *Id.* Whether a

22

statement is defamatory *per se* is generally a question of law. *See Lipsky*, 460 S.W.3d at 596.

Like his business disparagement claim, Hah failed to substantively address the essential elements of his defamation cause of action in his Responses to Melton's TCPA Motion to Dismiss. While he generally attached screenshots of Melton's social media posts to his Response, he did not explain which of these statements were defamatory, the defamatory nature of the statements, or specify how Melton's statements damaged him. *See id.*

More importantly, in the trial court, Hah did not raise or argue in his responses or in his affidavit that any particular statements constitute defamation *per se*. Rather, in his Responses, Hah confined his argument to his breach of contract cause of action and asserted he "has met his burden to establish by clear and specific evidence a prima facie case for each element of his breach of contract claim against Defendant that Defendant did not attempt to establish a valid defense to the claim." However, "[T]he TCPA requires that on motion the plaintiff present 'clear and specific evidence' of 'each essential element[,]'" which Hah failed to do here. *See id.* at 590. While it is generally true that defamation *per se* does not require proof of damages, in the absence of "pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged"

23

Hah, he cannot avoid dismissal. *See id.* at 591; *see also Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). We conclude Hah failed to establish a prima facie case for each element of his defamation claim by clear and specific evidence. *See Bedford*, 520 S.W.3d at 904; *Lipsky*, 460 S.W.3d at 591; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). We sustain issue five.

### 3. Issue Six: Invasion of Privacy

In issue six, Melton argues that Hah failed to meet his burden of establishing a prima facie case for each element of his invasion of privacy claim. Hah counters that "a fact issue exists as to whether Appellee suffered direct damages as a result thereof by way of Appellant linking his image to the defamatory posts complained of." Hah also contends on appeal that "'[i]nvasion of privacy' can include 'misappropriation' that involves using another[] person's name or likeness without their permission."

In Texas, the recognized types of invasion of privacy include: (1) intrusion upon seclusion or solitude or into one's private affairs; (2) public disclosure of embarrassing private facts; and (3) wrongful appropriation of name or likeness. *See Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994) (outlining cases recognizing each type of privacy right); *Doggett v. Travis Law Firm, P.C.*, 555 S.W.3d 127, 130 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). "Name

24

misappropriation is a species of invasion of privacy, and Texas law applies a very restrictive interpretation of the tort." *Cardiovascular Provider Res. Inc. v. Gottlich*, No. 05-13-01763-CV, 2015 WL 4914725, at *3 (Tex. App.—Dallas Aug. 18, 2015, pet. denied) (mem. op.) (citation omitted). Elements of a misappropriation claim are: 1) the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; 2) the plaintiff can be identified from the publication; and 3) there was some advantage or benefit to the defendant. *Watson v. Talia Heights, LLC*, 566 S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citations omitted). Texas law protects the value associated with the name, rather than the name *per se*. *See id.* at 330; *see also Express One Int'l Inc. v. Steinbeck*, 53 S.W.3d 895, 900 (Tex. App.—Dallas 2001, no pet.) (citation omitted).

As explained in issues five and six, the question is whether Hah presented clear and specific evidence of each essential element for his invasion of privacy claim–not whether a fact issue exists. *See Lipsky*, 460 S.W.3d at 590. Hah likewise failed to address the essential elements of an invasion of privacy misappropriation claim. Other than summarily averring in his affidavit and Responses to the Motion to Dismiss that he did not authorize Melton to use or publish his likeness, photographs, or videos of him, his offices, or other patients, Hah did not explain how

25

his evidence satisfied each of the requisite elements of this claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Although the screenshots attached to Hah's Responses showed that Melton or the other patients may have used Hah's image, Hah failed to show that Melton appropriated his image to take advantage of the value associated with Hah's name or image. *See, e.g., United Locating Services, LLC v. Fobbs*, 619 S.W.3d 863, 872–73 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (explaining that plaintiffs failed to show the value associated with their names and concluding they failed to establish "by clear and specific evidence a prima facie case for the first essential element of their Name Appropriation Claims"); *see also Watson*, 566 S.W.3d at 331 (explaining in no evidence summary-judgment context that plaintiff was required "to produce evidence showing that his name was misappropriated to take advantage of his reputation, prestige, or other values[]"). Hah therefore has also failed to establish a prima facie case for each requisite element of his misappropriation invasion of privacy claim by clear and specific evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Watson*, 566 S.W.3d at 329; *see also Fobbs*, 619 S.W.3d at 872–73. We sustain issue six.

### 4. Issue Seven: Breach of Contract

In issue seven, Melton argues that Hah failed to make a prima facie case for his breach of contract claim by clear and specific evidence. Melton specifically

26

challenges the contract's validity and contends that Hah failed to provide evidence of damages proximately caused by Melton's breach.

Once Melton showed the TCPA applied to Hah's claim, Hah needed to establish "by clear and specific evidence a prima facie case for each essential element" of his breach of contract claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *S & S Emergency Training Solutions, Inc. v. Elliot*, 564 S.W.3d 843, 847 (Tex. 2018) (noting second step of analysis after TCPA applicability is whether non-movant established by clear and specific evidence a prima facie case of each essential element of its breach-of-contract claim). The essential elements of a breach of contract cause of action are: "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (citations omitted).

Assuming without deciding the "Contract of Reasonable Expectations" Melton signed constituted a valid contract, Hah must still establish damages caused by Melton's breach. *See id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Hah pleaded in his Petition that as a result of Melton's breach, he has "suffered and

27

continues to suffer actual damages" and generally averred in his affidavit that Melton posted "false, defamatory, derogatory or mean-spirited or negative comments or reviews on social media designed to damage my reputation[.]" Hah's pleading and affidavit alleging he has been damaged is conclusory and not "clear and specific evidence" of particularized harm. *See Lipsky*, 460 S.W.3d at 592–93 (explaining that general averment of economic losses failed to satisfy TCPA's minimum requirements); *Gensetix, Inc. v. Baylor Coll. of Med.*, 616 S.W.3d 630, 647 (Tex. App.—Houston [14th Dist.] 2020, pet. dism'd) (noting same). Since Hah failed to provide "clear and specific evidence" of damages, Hah failed to establish a prima facie case for his breach of contract claim. *See Lipsky*, 460 S.W.3d at 590, 592–93; *Gensetix, Inc.*, 616 S.W.3d at 647; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). We sustain issue seven.

### 5. Issue Eight: Injunctive Relief

In issue eight, Melton contends that Hah cannot establish his entitlement to injunctive relief and has not attempted to. She also contends that it is "linked to one or more causes of action[,]" which all fail, so the claim for injunctive relief fails. "[T]he TCPA does not allow a request for injunctive relief to be separately challenged when it is linked to a cause of action." *See Cavin v. Abbott*, 613 S.W.3d 168, 171 (Tex. App.—Austin 2020, pet. denied) (citations omitted). Hah concedes

28

in his brief that his request for injunctive relief "is not an independent cause of action but is rather ancillary to Appellant's other claims." Having determined he failed to make a prima facie case for his other claims, we decline to address this separately from his other causes of action. *See id.*; *see also* Tex. R. App. P. 47.1.

**D. Issues Nine through Twelve: Affirmative Defenses**

In issues nine through twelve, Melton asserts she established affirmative defenses to Hah's claims. Since Hah failed to meet his burden of establishing a prima facie case for the essential elements of each of his causes of action by clear and specific evidence, the burden did not shift back to Melton to establish her affirmative defenses. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)–(d); *Youngkin*, 546 S.W.3d at 679–80 (discussing TCPA's burden shifting); *Coleman*, 512 S.W.3d at 899 (same). Accordingly, we need not address Melton's remaining issues. *See* Tex. R. App. P. 47.1.

## IV. Conclusion

We conclude that Melton met her initial burden to show that Hah's claims against her fall within the TCPA. Therefore, the burden shifted to Hah to establish by clear and specific evidence a prima facie case for each essential element of his claims. Hah failed to meet his burden. Hah failed to establish a prima facie case for his defamation, business disparagement, invasion of privacy, and breach of contract

claims, and his claim for injunctive relief was derivative of those claims. We hold the trial court erred by denying Melton's TCPA Motion to Dismiss. We reverse the trial court's denial of Melton's TCPA Motion to Dismiss, remand the case to the trial court so that it can enter a judgment dismissing Hah's defamation, business disparagement, invasion of privacy, breach of contract, and injunctive relief claims, and instruct the trial court to award Melton reasonable attorney's fees, costs, and other expenses incurred as allowed under the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.005, 27.009(a); *River Plantation Cmty. Improvement Ass'n v. River Plantation Props., LLC*, No. 09-17-00451-CV, 2018 WL 4120252, at *7 (Tex. App.—Beaumont Aug. 30, 2018, no pet.) (mem. op.) (remanding for entry of judgment dismissing causes of action and award of attorney's fees).

REVERSED AND REMANDED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on June 16, 2023
Opinion Delivered August 10, 2023

Before Golemon, C.J., Johnson and Wright, JJ.

30